NORTHERN PAC. R. CO. v. AUSTIN.

(Circuit Court of Appeals, Seventh Circuit. November 27, 1894.)

No. 150.

RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.
Where deceased was killed at a crossing where his view of the approaching train was obstructed, and the engineer did not see him till he was 20 feet from the crossing, and the engine 60 feet from it, *held*, that the question of contributory negligence was for the jury.

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

Action by Margaret Austin against the Northern Pacific Railroad Company. Plaintiff obtained judgment. Defendant brings error.

Thomas H. Gill, for plaintiff in error.

S. N. Dickinson, for defendant in error.

Before WOODS and JENKINS, Circuit Judges.

JENKINS, Circuit Judge. The defendant in error, as administratrix of the estate of her deceased husband, Willard Austin, brought her action under a statute of the state of Wisconsin to recover damages for the death of her husband, caused by the alleged negligence of the plaintiff in error. The accident by which the deceased came to his death occurred at a highway crossing called "Paint Creek Crossing," some three miles east of Chippewa Falls, on the Wisconsin Central Railroad, at the time operated by the plaintiff in error. At that point there was a single track running substantially east and west, crossing the highway at right angles. Westerly from the highway, and for a distance of about 275 feet, the railway runs on a sharp curve through a cut of from 10 to 15 feet, then for 225 feet over a fill, then entering and continuing in a cut westerly for something over 100 rods from the highway. One standing on the railroad track at the crossing is unable to see a locomotive approaching from the west for more than a distance of 600 feet. At a distance of 15 feet from the center of the track a locomotive approaching from the west can only be seen within a distance of 100 feet from the crossing. The highway between Chippewa Falls and Cadott, which crosses this railway at the place of the accident, on the southerly side of the railway curved around the intervening hill between the highway and the railway, an approaching train being hidden from the sight of a traveler on that part of the highway for a distance of 300 feet and over before reaching the crossing; and for a distance of about 80 feet from the crossing the intervening hill seriously interferes with the hearing by a traveler upon the highway of the signals of trains approaching the crossing from the west. The accident occurred at about 8 o'clock in the morning of the 12th of February, 1892,—a clear, cold, frosty morning. The deceased, who was familiar with the crossing, was driving a fairly spirited team hitched to a pair of bobs. According to the testimony of the engineer of the train, which came from the west, he first observed the deceased when the train was about 60 feet from the crossing, and the horses were about 20 feet from the track. The train had a speed of about 18 miles an hour, and the horses were traveling at about the rate of 6 miles an hour. The deceased was standing in the middle of the front bob with his overcoat on, its collar turned up around his face, and a scarf or some such article tied around the collar. The negligence charged was the failure of the engineer to sound the whistle or to ring the bell on the approach of the train to the crossing, and also a failure by the company to restore to its former state of usefulness the highway

in question, which had been changed when the railroad was constructed, so that the travel at and south of the crossing must turn to the southwesterly, around the base of the hill, which thus obstructed the view of trains approaching from the west, whereas previously the travel had gone directly over the hill.

The only question we are asked to review is that of the alleged contributory negligence of the deceased. It is asserted that the undisputed evidence establishes, as a matter of law, such contributory negligence. It is unquestionably true that it is the duty of a court to withdraw a case from the jury where the evidence of contributory negligence is so clear that reasonable minds can draw but one conclusion from the evidence. The question, however, is generally one of mixed fact and law, to be resolved by the jury under proper instructions from the court. Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569; Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85; Railroad Co. v. Meyers, 18 U. S. App. ——, 10 C. C. A. 485, 62 Fed. 367; Railroad Co. v. Kelly, 18 U. S. App. ——, 63 Fed. 407. We cannot say, after a careful review of the testimony, that, as matter of law, the deceased was guilty of contributory negligence. We think that it was a proper case for submission to the jury, and that it was fairly and fully submitted by the court below. It was undoubtedly the duty of the deceased, in approaching this dangerous crossing, and which he knew to be dangerous, to exercise all due care and caution to avoid injury. It was his duty to listen and to look for approaching trains. Possibly, it was his duty, in view of the surroundings, to have stopped his team, and to have proceeded to the crossing to look for any approaching train; and yet it may well be observed, as was suggested by counsel, that had he done so, and, observing none, returned to his team, a train going at like speed with this one might have come upon the crossing while the deceased was returning to his team and was driving them over the crossing; so that it became a question for the jury to determine whether the deceased did in fact so stop and look and listen, and whether, under the circumstances, it was prudent to have so done. The witnesses testifying to being eyewitnesses of the accident were Phipps, the engineer of the train, and one Montana. It is asserted that the evidence of the latter witness establishes that the deceased did not stop, did not look or listen, but drove upon the crossing without using any precautionary measures to discover an approaching train. It may be open to question if his testimony goes so far. But, if it did, a fact is not always established because asserted by the uncontradicted testimony of a witness. There may be circumstances disclosed, impeaching his credibility, of such character as to carry a case to the jury upon the question whether the witness is worthy of belief. There were such circumstances in this case with respect to this witness. It would serve no good purpose to enter into detail, but we think it cannot be said that the jury were unwarranted in refusing credit to his testimony. The evidence of the engineer, Phipps, giving full credence to it, does not so clearly disclose negligence on the part of the deceased, contributing to the injury, that the presumption that he was in the exercise of due care can be said .

to have been fully rebutted, or to sanction the withdrawal of the case from the jury. When Phipps first saw the team he was within 60 feet of the crossing, his train having a speed of 18 miles an hour. The team was within 20 feet of the crossing, proceeding at the rate of 6 miles an hour. A collision would necessarily result within two seconds. This evidence does not tend to show that the deceased had not stopped, and had not proceeded to the track and looked and listened. It does not appear, with that clearness that would justify the taking of the case from the jury, that after the train came within his sight the accident could have been avoided by due care upon the part of the deceased, the burden of proof being upon the company. Undoubtedly, there were circumstances attending the actions of the deceased upon the occasion in question, as disclosed by the witnesses mentioned, that, if their evidence may be relied upon, go far to show a want of that care demanded by the dangerous character of this crossing. At the same time, bearing in mind that no one can speak to the transaction from the standpoint of the deceased, and that the credibility of one of the witnesses was seriously impugned, we cannot say that reasonable minds could draw but one conclusion from the testimony, and so authorize us to declare, as matter of law, that the conclusion to which the jury arrived upon the evidence was unwarranted, and counter to the fact and the law. We see no error in the submission of the cause, and no ground calling upon us to disturb the verdict. The judgment will be affirmed.