## CHICAGO & N. W. RY. CO. v. NETOLICKY.

(Circuit Court of Appeals, Eighth Circuit. April 1, 1895.)

### No. 508.

1. NEGLIGENCE--QUESTION FOR JURY.

The tracks of the C. Ry. Co., running east and west, crossed a highway, running north and south, near a large city. For some distance north of the tracks the highway ran between a grove on the west and a 20-foot embankment on the east, on which were the tracks of the B. Ry. Co., the C. Ry. tracks passing through the embankment by a culvert about 120 feet from the highway. The embankment and culvert obstructed the view of the C. Ry. tracks from the highway, up to a point very near such tracks, and also obstructed the sound of trains approaching from the east. One T., while driving an empty wood wagon, at a trot, southward, along the highway, was struck at the crossing by a freight train coming from the east, and killed. It appeared that persons in a sleigh some distance behind T. heard the train before T. reached the crossing; that T. apparently knew nothing of the train until it whistled for the crossing, and then looked first west, then north on the B. tracks, and then east, and was nearly on the tracks before he appeared to see the train, when he whipped up his horses, and tried to cross the tracks. There was also evidence that the first whistle was sounded by the engine when it was between the whistling post, east of the crossing, and the culvert, and about 400 or 500 feet from the crossing; and that the train was running at a speed of 18 miles or more per hour; and that some persons near by heard no whistle or bell till the engine was entering the culvert. *Held,* that the questions of the negligence of the railway company and the contributory negligence of T. were for the jury.

2. SAME--DANGEROUS CROSSING.

It is not necessarily a sufficient exercise of care on the part of a railway company, whose tracks cross a highway at grade, to sound the whistle and ring the bell of its engines, at the distances from such crossing prescribed by a statute requiring such warnings to be given; but such company is bound so to manage its trains, and to give such warnings of their approach, or take such other reasonable precautions, as not to cause unnecessary risk to persons on or about the crossing.

**3. SAME—EVIDENCE—SIMILAR OCCURRENCES.**

Following District of Columbia v. Armes, 2 Sup. Ct. 840, 107 U. S. 519, *held,* that it is not error, in an action against a railway company for damages for an accident at a grade crossing, to permit witnesses who are familiar with the locality to testify to narrow escapes they have had at the same crossing, in connection with descriptions of the locality, for the purpose of showing the nature of the crossing and the difficulties of travelers in passing over it.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

This was an action by Voclov Netolicky, as administrator of the estate of Joseph Tripkosh, deceased, against the Chicago & Northwestern Railway Company, to recover damages for the death of the intestate. The plaintiff recovered judgment in the circuit court. Defendant brings error.

N. M. Hubbard and Frank F. Dawley (N. M. Hubbard, Jr., on the brief), for plaintiff in error.

Charles A. Clark, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This was a railroad crossing case. The defendant in error, Voclov Netolicky, suing as administrator of Joseph Tripkosh, deceased, brought an action against the Chicago & Northwestern Railway Company, the plaintiff in error, for the death of his intestate, Joseph Tripkosh, who was killed by a freight train of the defendant company on December 1, 1892, at a point a few miles south of the city of Cedar Rapids, in the state of Iowa, where the defendant company's railroad crosses one of the main traveled thoroughfares leading from the south into the city of Cedar Rapids. The undisputed testimony in the case warrants the conclusion that the railroad crossing in question was more than ordinarily dangerous, for the following reasons: Owing to the location of the crossing near a large city, many vehicles pass over the crossing daily and hourly. For a considerable distance north of the crossing, in the direction of Cedar Rapids, the public thoroughfare runs parallel to and on the west side of the track of the Burlington, Cedar Rapids & Northern Railroad Company, hereafter spoken of as the "Burlington Road," which track is there laid on a high embankment. For at least 80 rods north of the crossing in question the public highway is quite close to this embankment, and in the lee thereof, so that the view to the east is entirely cut off. On the west side of the highway there is a grove, which also extends from the crossing for a considerable distance to the north, and effectually obstructs the view to the west. The track of the defendant company runs about due east and west, passes underneath the track of the Burlington road through a culvert in the embankment, and crosses the highway at grade, at right angles to it, and at a point not more than 120 feet west of the mouth of the culvert. Travelers on the highway approaching the crossing from the north cannot see a train on the defendant's road approaching from the east, until they are, as some witnesses say, within 10 feet of the crossing. The embankment of the Burlington road, at the culvert and for some distance both north and south, is

20 feet high. The culvert through the embankment is 29 feet wide. On some occasions it seems that it is quite difficult for a person on the highway north of the crossing to hear a train approaching from the east, until it emerges from the culvert, or, if the rumble of a train is in fact heard, to determine accurately whether it is approaching on the Burlington road or on the defendant's track. At the time of the accident, the plaintiff's intestate, who was a man then about 50 or 55 years old, was driving home from Cedar Rapids with a double team attached to an empty wagon, which was provided with a wood rack for the purpose of hauling wood. He was traveling south along the highway above described, and, as he reached the crossing, was struck and killed by an engine of a freight train that was running west on the defendant's track.

As is usual in this class of cases, there are two fundamental questions presented by the record. The first is whether the plaintiff's intestate was so obviously guilty of contributory negligence that the trial court should have directed a verdict for the defendant on that ground. The second is whether there was such an utter failure to produce evidence tending to show negligence on the part of the defendant company, its agents or servants, that the court should have directed a verdict in the defendant's favor for that reason.

The material facts, other than those heretofore stated, which the evidence tended to establish, and in the light of which these questions, particularly the first, must be determined, are as follows: The day of the accident was a cloudy winter's day. There was some snow on the ground, and the wind was blowing moderately from the north. For some distance before reaching the crossing, Tripkosh had driven along the road in company with a two-horse sleigh, which carried the mail, a driver, and one passenger. When the deceased reached the crossing, he was 15 or 20 rods in advance of the sleigh. The deceased had been driving at a trot a portion of the time, until he came within 15 yards of the crossing. The wood wagon in which he was riding made some noise. The two persons riding in the sleigh had heard the coming freight train for some little time before Tripkosh reached the crossing, but the deceased had given no outward indication, as these persons say, that he was conscious of its approach until the engine was heard by the driver of the sleigh to whistle for the crossing, when, as the driver says, Tripkosh looked first to the west, then back north along the Burlington road or track, and then east. When he first seemed to become aware of its approach on the defendant's track, as he looked east, his team was within 4 feet of the railroad track, and he was himself within 15 feet of it. The deceased then whipped his horses, and made an urgent effort to get across, but failed in the attempt. There was other testimony which tended to show the following facts: That, at a point 34 feet north of the track, the engine might have been seen 180 feet east of the crossing; that the freight train was running 18 miles an hour, and possibly at a higher rate of speed; that the first whistle heard by the driver of the sleigh, which the deceased apparently heard, was sounded when the engine was between the whistling post east of the culvert and the culvert, at a point about 400 or 500 feet from the crossing; and that when the

deceased first saw the engine, and became conscious that it was approaching on the defendant's track, it was much nearer to the crossing, and, at the speed it was running, would cover the intervening space in a very few seconds. There was also some negative testimony, given by persons who were in the immediate vicinity of the crossing, to the effect that they did not hear the engine sound its whistle or ring its bell until the engineer, on entering the culvert, discovered the deceased in the act of passing over the track.

On this state of facts, it is contended for the defendant company that, as the two persons riding in the sleigh heard the approach of the train some time before they reached the crossing, the deceased should also have heard it, and that, as the train might have been seen at a distance of 34 feet from the track, the deceased should have seen it, and should have stopped at that point until the train passed. For both of these reasons, it is claimed that the deceased was obviously guilty of contributory negligence, and that the court should have so declared as a matter of law. This contention, however, overlooks the fact that it was not conclusively shown by the testimony that the deceased might have seen the engine of the approaching train when he was 34 feet north of the crossing. One witness testified, from a personal examination of the place, that he could not have seen through the culvert, the east entrance of which was a little less than 180 feet from the crossing, until he was within 10 feet of the track; and that he did not in fact see the approaching train until his team was within 4 feet of the track, and he was himself within 15 feet of it, is a conclusion that the jury were entitled to draw from the testimony of all the persons who were eyewitnesses of the accident. Moreover, the apparent failure of the deceased to hear the rumble of the approaching train, as others heard it before they came in close proximity to the track, does not seem to us to be a circumstance which in itself conclusively showed that he was guilty of a want of ordinary care. He was riding in a wagon over frozen ground, which necessarily made more noise than the sleigh, and his sense of hearing, though not defective, may have been less acute than that of the persons in the sleigh. Besides, his action when the whistle was first sounded, as described by the driver of the sleigh, in looking first to the west, then to the north, and finally to the east, was sufficient to warrant an inference that the first signal heard did not indicate to the deceased from which direction the train was approaching, and that, for some reason, the first sound heard by him seemed to come from the west or north rather than from the east. Neither can we say that the conduct of the deceased in attempting to cross the track after he saw the approaching train was so manifestly negligent that the court should have denied the plaintiff's right to recover. It must be borne in mind that his team was then practically on the track; that he was confronted with a great peril; that he had no time for reflection; and that the average man thus situated would naturally obey the first impulse. It is not reasonable to predicate negligence of what a person acting on a sudden impulse, and without time for thought, may do under such circumstances. If he was

guilty of a culpable neglect of duty, it consisted, as we think, in getting into the dangerous situation last described, rather than in the attempt to cross the track after he saw the train; and, as we have already remarked, it does not occur to us that the mere fact of his near approach to the track before discovering the train was in itself a circumstance which conclusively established a want of ordinary care. The conditions surrounding him were such that it is by no means improbable that he may have been exercising his sense of hearing and his other faculties with as much diligence as the law exacts, and yet have remained utterly ignorant that a train was coming until it was too late. We are unable to say that all reasonable men, on the state of facts disclosed by the record, would necessarily reach the conclusion that the deceased was at fault; and, not being able to so declare, it follows that the issue of contributory negligence was properly submitted to the jury. Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679; Sullivan v. Railroad Co. (Mass.) 28 N. E. 911.

The second question, above stated, whether there was any evidence tending to show a want of ordinary care on the part of the railway company, can be best considered in connection with that portion of the charge wherein the trial court defined the degree and kind of care which the defendant company was bound to exercise in running its trains over road crossings. On that subject the circuit court charged the jury substantially as follows: First, that the railway company was in duty bound, in running its trains over highways, to so manage them, and to give such warning of the approach of trains, as not to cause unnecessary risk or hazard to persons who happened to be on or about the crossing; second, that the statute of the state of Iowa directing what signals shall be given with the bell and whistle as a railroad train approaches a grade crossing is not to be understood or construed as prescribing in all cases the full measure of the duty which a railway company owes to travelers upon the public highways, even at crossings outside of the limits of cities and villages; third, that a railway company may justly be expected and required, besides sounding the bell and whistle, to take such other reasonable precautions to prevent accidents as are fairly within its power, whenever a particular grade crossing is extra hazardous, being so situated that the statutory signals are not adequate to give a sufficient warning of the approach of a train to travelers upon the highway, who are themselves exercising ordinary care; and, fourth, that, while the law does not prescribe any fixed rate of speed at which trains shall be run over country crossings, yet that it does require that the rate of speed shall bear a reasonable relation to the kind of warning given, so that the warning may not be rendered inadequate or ineffectual to prevent accidents because of the speed of the train. Having given these directions, in substance, the circuit court left the jury at liberty to determine, in view of all the evidence as to the character of the crossing, the speed of the train, the manner in which it was handled, and the kind of signals that were actually given or that might have been given, whether the

defendant could be said to have been guilty of any fault or neglect of duty. It will be observed, therefore, from the character of these instructions, that, as the case was submitted to the jury, the finding with respect to the defendant's negligence was not made to turn solely on the question whether the statutory signals had been given at the proper distance from the crossing, but on the broader inquiry whether, in view of the location of the crossing in the lee of a high embankment, which cut off the view to the east, the defendant company had in fact taken all of the precautions to prevent accidents that it might reasonably be expected and required to take.

If the foregoing declarations of law were right, then it cannot be successfully maintained that the evidence was insufficient to support the verdict. It is contended, however, that the charge was erroneous, one objection to it being that there was no evidence to support the specifications of negligence contained in the complaint, and that the instructions broadened the issues raised by the pleadings so as to allow the jury to hold the defendant accountable for derelictions of duty that were not alleged in the complaint. This criticism of the charge does not appear to us to be well founded. The plaintiff did not complain merely of a failure to give the statutory signals as the train approached the crossing. He complained generally of the dangerous location of the crossing in the lee of an embankment, which, as he averred, cut off the view to the east, deadened the sound of approaching trains, and made it the duty of the defendant to station a flagman at the crossing, or to employ some other adequate means of warning travelers when trains were approaching. He also averred generally that the freight train in question was carelessly and negligently run, and at a dangerous rate of speed, and that there was a failure on the part of the defendant company to give such signals as the law required it to give. These allegations were sufficient to apprise the defendant that it would or might be claimed at the trial that reasonable precautions were not taken to guard the crossing, owing to its peculiar location; that the train was not handled or managed as it should have been at such a crossing; that the rate of speed, under all the circumstances of the case, was excessive; and that proper signals were not given. We think, therefore, that the complaint contained a sufficient statement of the grounds of recovery that would be relied upon to warrant a consideration of all the circumstances and conditions that the jury were allowed to consider under the instructions given by the trial court. No objection was taken to the introduction of any testimony on the specific ground that it tended to show acts of commission or omission that were outside of the case made by the pleadings. On the contrary, it seems to have been taken for granted that all of the evidence relating to the location of the crossing, and what was done or left undone on the occasion of the accident, was strictly relevant to the issues as they had been framed. For these reasons, we are unable to assent to the view that the circuit court went outside of the issues raised by the pleadings, and allowed the jury to find the defendant guilty of

derelictions of duty that were not sufficiently charged **in the com-**
plaint.

Another objection to the charge seems to be that the court erred in
the construction that it placed on the Iowa statute in holding, as it
did, that a railway company, under some circumstances, may be
guilty of a want of reasonable and ordinary care, in the manner in
which it runs a train over a road crossing, although its employés
comply with the terms of the statute in the matter of sounding the
whistle and ringing the bell of the engine at a distance of 60 rods
from the crossing. It is also suggested that the court erred in in-
structing the jury that the speed of a train when it approaches a
crossing ought to bear a reasonable relation to the kind of signals
given, or to the other precautions that are taken at the particular
crossing, to warn travelers of the approach of trains. With reference
to these objections, it is only necessary to observe that controlling au-
thority for all that was said by the circuit court on these points is to
be found in Railway Co. v. Ives, 144 U. S. 408, 420, 12 Sup. Ct. 679,
and in Improvement Co. v. Stead, 95 U. S. 161, 164. In the latter of
these cases, while considering the speed of trains at road crossings
and the warnings that ought to be given at such places, Mr. Justice
Bradley said:

> "But what is reasonable and timely warning may depend on many cir-
> cumstances. It cannot be such if the speed of the train be so great as to
> render it unavailing. The explosion of a cannon may be said to be a
> warning of the coming shot; but the velocity of the latter generally out-
> strips the warning. The speed of a train at a crossing should not be so
> great as to render unavailing the warning of its whistle and bell; and this
> caution is especially applicable when their sound is obstructed by winds and
> other noises, and when intervening objects prevent those who are approach-
> ing the railroad from seeing a coming train. In such cases, if unslackened
> speed is desirable, watchmen should be stationed at the crossing."

In the case of Railway Co. v. Ives it was declared to be a well-
established doctrine "that under certain circumstances a railway
company will not be held free from negligence, even though it may
have complied literally with the terms of a statute prescribing cer-
tain signals to be given and other precautions to be taken by it for
the safety of the traveling public at crossings." In the same case it
was further held, in effect, that when a crossing is shown to be extra
hazardous, either because the view is obstructed, or because the cross-
ing is much frequented, and the sound of approaching trains is
rendered indistinct, it is usually a question for the jury whether, in
the exercise of ordinary care, additional precautions to prevent ac-
cident, other than those specially enjoined by the terms of a local
statute or ordinance, ought not to have been taken. The same
view was adopted and enforced in each of the following cases: Rail-
road Co. v. Perkins, 125 Ill. 127, 17 N. E. 1; Thompson v. Rail-
road Co., 110 N. Y. 636, 17 N. E. 690; Shaber v. Railway Co., 28
Minn. 103, 107, 9 N. W. 575; Winstanley v. Railway Co., 72 Wis.
375, 39 N. W. 856; Louisville & N. R. Co. v. Com., 13 Bush, 388;
Weber v. Railroad Co., 58 N. Y. 451, 458; Guggenheim **v.** Railway
Co., 66 Mich. 150, 33 N. W. 161.

The several objections to the charge already noticed and considered embrace all of the specific exceptions thereto which were taken by the defendant, and what we have said with reference to these exceptions is sufficient to show that the charge was substantially correct, and that no material error was committed in refusing the instructions that were asked by the defendant company. Indeed, it is apparent from an inspection of the record that the fundamental propositions of law contained in the charge were conceived and framed with special reference to the two federal decisions heretofore cited, and that they are in harmony with the principles that were approved and applied in those cases. It is also obvious that the circuit court held that the case at bar was one in which the jury were entitled to decide whether, on the occasion of the accident, the defendant company had discharged its full duty to the deceased and to the public; and, in view of the location of the crossing and the testimony tending to show its extra hazardous character, we fully concur in that view.

One further assignment of error remains to be noticed. In the course of the trial three witnesses, who had often traveled over the crossing now in question, and who were familiar with its location and surroundings, were called by the plaintiff for the purpose of showing its dangerous character. After describing the crossing, its distance from the mouth of the culvert, and the various objects that interfered with the view in both directions, they were allowed to give instances in which they had themselves narrowly escaped being injured by trains while passing over the crossing in vehicles. In admitting the evidence, the court cautioned the jury that it was not admitted for the purpose of showing negligence on the part of the defendant company on former occasions, but solely for the purpose of showing the nature of the crossing and the difficulties that travelers upon the highway had encountered when passing over it, in discovering whether a train was approaching. An exception was duly taken by the defendant to the admission of this evidence. The most obvious objection to the testimony, and the one that is urged by the defendant, is that it had a tendency to introduce collateral issues into the case. No one, however, can doubt the great weight that men would ordinarily attach to such incidents as tending to show whether a crossing is safe or unsafe, especially when the incidents are narrated by persons who participated therein, who are familiar with the crossing, and who, in the same connection, describe the physical surroundings of the place. Taken in connection with the description given of such surroundings, the testimony illustrated in a practical way how the obstacles described inevitably tended to produce accidents.

Whatever doubt we might otherwise have entertained of the admissibility of this evidence, because of its tendency to raise collateral issues, must be resolved against the defendant on the strength of the decision in the case of District of Columbia v. Armes, 107 U. S. 519, 524, 2 Sup. Ct. 840, which seems to be on all fours with the case at bar. In that case, as in this, testimony was offered and admitted of other accidents which had occurred at a given place, and it was held to be admissible for the purpose of showing the dangerous character of the

place. The contention on the part of counsel that the evidence was held admissible in the case last referred to solely for the purpose of showing notice to the municipality that a street was out of repair is not tenable. The court expressly held that the frequency of accidents at the particular place was good evidence of its dangerous character, or, at least, that it was some evidence to that effect. The court also answered the objection raised in that case that the evidence tended to introduce collateral issues, by saying that in point of fact "no dispute was made as to these accidents, no question was raised as to the extent of the injuries received, no point was made upon them, no recovery was sought by reason of them, nor any increase of damages." The same remark may be made with reference to the evidence introduced in the case at bar. It did not in fact lead to the introduction of any collateral issues. That the several witnesses had narrowly escaped injury at the times stated and in the manner described was not denied; nor can the testimony be said to have misled the jury in any respect, because the court expressly cautioned the jury that the testimony should only be considered in so far as it tended to show the character of the crossing. Upon the whole, we have concluded that the admission of the testimony was not such an error as would warrant a reversal of the case. The judgment of the circuit court is therefore affirmed.

### On Rehearing.

#### (May 13, 1895.)

PER CURIAM. The petition for a rehearing which has been filed in this case does not call our attention to any material fact or circumstance or to any controlling authority which was overlooked in deciding the case, or that has not already received careful consideration. Under these circumstances it is not our habit to file written opinions in overruling motions of this character. When all of the questions to which our attention was directed on the argument have been fully considered and decided, we cannot undertake the labor of restating our conclusions, or of elaborating our views, because we are invited to do so by a motion for a rehearing. We depart from our usual practice in this instance for the purpose of noticing briefly a suggestion, contained in the petition for a rehearing, that the deceased was, as a matter of law, guilty of contributory negligence in attempting to pass over the crossing after he was aware that a train was approaching. We recognize the rule declared in Railroad Co. v. Houston, 95 U. S. 697, and in other kindred cases, that where a person, without any excuse for so doing, undertakes to cross a railroad track in advance of a train, which he knows to be approaching rapidly, and in so doing sustains injury, he is guilty of such negligence as will preclude a recovery. The case at bar is clearly distinguishable, we think, from that class of cases. As we have already pointed out, there was evidence in the present case which strongly tended to show, and which probably induced the jury to believe, that when the deceased first saw the coming train his horses were practically on the railroad track, so that any course he might then see fit to pursue, whether he went forward or

tried to turn backward, was fraught with great danger. We are unwilling to declare, as a matter of law, that a person who is called upon to act under such circumstances, and to act instantaneously, is guilty of negligence if he does not choose the safer course. In such a case the inference of contributory negligence, if it is a justifiable inference, should be drawn by the jury, rather than by the court. Nor are we able to say, as a matter of law, that the deceased was placed in the dangerous situation last mentioned by reason of his own want of ordinary care. In the opinion on file we have described the location of the crossing in detail, and further remarks on that subject are unnecessary. It is sufficient to say that the jury may have found, in view of the character of the cross-ing, that, without any culpable neglect on the part of the deceased, he remained utterly ignorant of the impending danger until he was placed in a position of great peril. Granting that at a point 34 feet north from the center of the track an engine could be seen enter-ing the culvert from the east, at a distance of 180 feet from the crossing, yet at the rate of speed at which this train may have been moving it does not follow that the engine was at the point last mentioned, and in plain view, when the deceased was exactly 34 feet north of the track. He may have been, and the jury probably found that he was, much nearer to the track when the engine came first into view. The speed of the train, the precise distance that it would move in a second of time, the place at which it first gave warning of its approach, whether at the whistling post or between that point and the bridge, and the kind of warning actually given, were each questions of fact that have an important bearing on the issue of contributory negligence, and it is hardly necessary to ob-serve that they were questions which the jury were entitled to con-sider and decide. We think, therefore, that the question of con-tributory negligence was necessarily submitted to the jury, and that that issue was submitted under instructions from the court which were substantially correct. In support of the conclusions an-nounced in the opinion now on file we refer to a recent decision by the United States court of appeals for the Seventh circuit in the case of Railroad Co. v. Austin, 12 C. C. A. 97, 64 Fed. 211, which bears a strong resemblance to the case at bar. See, also, Ernst v. Railroad Co., 35 N. Y. 9, 41. The motion for a rehearing will be denied.