## HAYES v. NORTHERN PAC. R. CO. et al.

### (Circuit Court of Appeals, Seventh Circuit. May 4, 1896.)

#### No. 292.

1. RAILROAD COMPANIES—LEASE—LIABILITY FOR NEGLIGENCE.

While a railroad company cannot, by leasing its line without authority of law, relieve itself of any liability flowing from the manner of its operation, nor, by leasing its line under authority of law, relieve itself of the responsibilities imposed upon it by the law of its incorporation, or of liability in the discharge of the positive duties which it owes to the public, yet a railroad company which has leased its line, under due legislative authority, is not liable for the negligent management of the road over which it has no control. Arrowsmith v. Railroad Co., 57 Fed. 165, followed.

2. CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Plaintiff, a night yard master in the employ of a railroad company, was walking, on a dark night, between two tracks in the company's yard, on one of which a freight train was moving past him. He stepped on the ties of the vacant track, in order to pass around a switch stand, the space between the tracks being narrow, and continued walking along the ties for a short distance. A few minutes before, he had looked back over the track, and had seen no train approaching, and he knew that, in the usual

course of things, no train would be run over the track on which he was for some hours. While he was thus walking along the track, an extra train, backing down the track in a manner conceded to be negligent, overtook plaintiff, and knocked him under the wheels of the other moving train, by which he was injured. *Held*, in an action by plaintiff against the company, that he could not be held guilty of contributory negligence, as a matter of law, though walking on the track without looking back, but that the question was for the jury.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This suit was brought in the court below by Michael T. Hayes, the plaintiff in error, against the several corporations named, to recover damages for injuries sustained through alleged negligence in the operation of a train of the Northern Pacific Railroad Company. The accident occurred in the Central Avenue yards, in the city of Chicago, and south of the main tracks of railway owned by the Chicago & Northern Pacific Railroad Company, which railway had, long prior to the injury, been leased for a term of years by the Chicago & Northern Pacific Railroad Company to the Wisconsin Central Company, a corporation owning or operating a line of railway through the state of Wisconsin to the state line dividing the states of Illinois and Wisconsin, and which line of railway first mentioned had prior to the accident been leased by the Wisconsin Central Company, together with its own lines of railway, for a term of years, to the Northern Pacific Railroad Company. The latter company operated, by means of its own line and the leased lines, a continuous line of railway from the city of Chicago, through the state of Wisconsin, to the Pacific coast. At the Central Avenue yards there were two main tracks running east and west, the north track being the outbound main track, the south track being the inbound main track. These two tracks were used by the Northern Pacific Railroad Company and by the Chicago, St. Paul & Kansas City Railroad Company for all of their trains entering or leaving the city of Chicago. Central avenue crosses the main tracks substantially at right angles. West of Central avenue is located a switch in the outbound track, and also a switch in the inbound track, with a cross-over connecting the two tracks at these switches. Near the east line of Central avenue is a switch in the inbound track from which a track leads to the southeast. A short distance east from this switch in the track projecting from the inbound main track is another switch, from which diverge two tracks running east and west, parallel with each other. Of these the north track is called the "Wisconsin Central" or "W. C." lead, and extends for some distance east into that part of the yard appropriated for the use of the Northern Pacific Railroad Company, or, as was commonly known, the "Wisconsin Central Line." The south one of these tracks was known as the "Kansas City," or "K. C." lead, from which branched at short intervals switch tracks towards the southeast, forming the "K. C." yard. The distance between the centers of tracks at this locality is 13 feet, the distance between the nearest rails of adjoining tracks being 8 feet.

The appellant was the general night yard master of the Chicago, St. Paul & Kansas City Railroad Company. At half past 8 o'clock of the night in question, in company with one Roth, a servant under him, he left the station, which was about 150 feet west of Central avenue, for the purpose of going down into the yard of that company to give certain orders. They walked east between the inbound main track and the K. C. lead, to the track connecting these two tracks. At a point near No. 2 switch, it occurred to him to send a message to the city, and the two men stopped there for a few moments while the appellant gave Roth directions with reference to the message. While so standing, appellant was looking to the west in the direction from which the train causing the injury came, but saw no train approaching. Upon separating, Roth crossed the W. C. lead towards the north, and started west towards the station. The switch stands placed between the tracks are within three feet of the south rail of the W. C. lead. At this time a K. C. train was switching on the K. C. lead. When that lead is occupied by a train, one can only pass on the north side of the switch stand; and, to do so, it

is necessary for him to walk on the ties of the W. C. lead. The appellant, upon separating from Roth, walked easterly upon the ends of the ties, and carrying a lighted lantern. He had covered a distance of from 45 to 60 feet from the spot where he left Roth, and was about to leave the end of the ties for the narrow space between the two leads, when he was struck by a train of the Northern Pacific Company backing eastwardly on the W. C. lead, and was thrown under the Kansas City train, and received the injury complained of. The train that struck the appellant was a west-bound freight train of the Northern Pacific Company, consisting of an engine and six cars, which were backing upon the track in question. The train had come from the city, and gone west of the station on the main track, and for some purpose was backing into the yard upon the W. C. lead. It had probably passed the station while the appellant was there before he had gone east into the yard; but for some reason, probably owing to the passage of the K. C. train upon the other track, he was not aware of the fact. The rules of the company require that, in backing the train through the railroad yard in the night-time, a man should be stationed on the rear car, displaying a bright light. The evidence for the appellant tended to show that there was no man or light upon the rear car of this train, and that no signal or warning of any kind was given of its approach; that it was moving at a speed of from 15 to 20 miles an hour; and that the night was dark and foggy. From the time he left Roth until he was struck, the appellant did not again look back to the west. The cars varied in width from eight feet two inches to nine feet two inches. The bolt heads, hand holds, and car door projected some four inches in addition; so that a car of the greatest width would extend over the rail some two feet and three inches, or, including the space occupied by the bolt heads, etc., two feet and seven inches. When both tracks were occupied by cars, there would be not to exceed three feet clearance between the two tracks. The appellant testified that this W. C. lead was seldom used, and then only by the freight trains of the Northern Pacific Company, except occasionally by switch engines of the Kansas City Company. He further testified that the only trains of the Northern Pacific Company naturally to be expected during the evening were the regular train No. 25, which he saw go out some time before, and train No. 27, leaving about 10 or 10:30 o'clock at night. The train causing the injury was an extra, or second section of train No. 25, which the appellant states he did not know of or expect. The accident occurred about 8:30 o'clock in the evening. There was evidence tending to show, but it was not undisputed, that this second section or extra train was only occasionally run, and when there was too much freight for the regular train to carry. It is left somewhat obscure by the evidence how far he had passed beyond the switch No. 2 upon the end of the ties before he sought to turn; that is, whether the distance was 15 to 20 paces from the point where he left Roth, or 15 to 20 paces from the switch. At one point in the evidence, the appellant states that he had gone some 15 or 20 feet from the switch at the time he was struck by the train. At the conclusion of the evidence, the Chicago & Northern Pacific Railroad Company moved the court to instruct the jury to find a verdict in its favor, upon the ground that no negligence had been proven against it. This motion was overruled by the court, upon the ground that the company was the owner of the track upon which the accident occurred, and liable for the negligent acts of the lessee. To this ruling, there was seasonable exception by that company. Thereupon the counsel for the Chicago & Northern Pacific Railroad Company and the Northern Pacific Railroad Company (the Wisconsin Central Railroad Company not appearing at the trial) moved the court to instruct the jury to find a verdict for the defendants, on the ground that the plaintiff was shown to have been guilty of contributory negligence. This motion was granted, and, by direction of the court, the jury rendered a verdict for the defendants, upon which judgment was entered, to review which judgment this writ of error is sued out.

James C. McShane, for plaintiff in error.

K. K. Knapp and I. K. Boysen, for defendants in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after this statement of the case, delivered the opinion of the court.

Whether the lessor railway company is relieved from liability for injuries resulting from the negligent operation of the road by the lessee is a question upon which courts may be said to be not wholly at agreement, although the supposed disagreement is more seeming than real. Unquestionably, a railroad company cannot without legislative authority lawfully lease its line of railway, and in such case cannot, by in fact so doing, relieve itself of any liability flowing from the manner of its operation; and this because the leasing was without authority of law, and the lessee stands in the relation of agent of the lessor, acting for the lessor, and binding the lessor by every act done in the management of the road. Where there is due authority of law for the leasing of a railway, the company cannot, by leasing its line, discharge itself of those responsibilities which are imposed upon it by the law of its incorporation, and cannot relieve itself from liability in the discharge of those positive duties which it owes to the public, and have been specially imposed by its charter. It is, however, a different question when the lessor company is sought to be made liable for the negligent management of the road which it was authorized to lease, and of which management it had no control. In such case we perceive no ground of public policy which should impose such liability upon the lessor company with respect to injuries resulting to individuals from the negligent operation of the railway. The subject has been much discussed, and some of the cases are characterized by lack of discrimination between liability for duties absolutely imposed by law upon the lessor company and duties arising from the manner of the operation of trains.

We think the distinction is well stated by the supreme court of Kansas in Railway Co. v. Curl, 28 Kan. 622, in an opinion delivered by Judge Brewer, then of that court, now associate justice of the supreme court of the United States. It is there said, in response to a contention that, where the statute authorizes the lease by one railway company to another of its track, the lessor company is not responsible for injuries caused by the torts of the lessee company:

"To a certain extent this proposition is true. If the injury results from negligence in the handling of trains or in the omission of any statutory duty connected with the management of the road, matters in respect to which the lessor company could, in the nature of things, have no control, then the lessee company will alone be responsible; but, when the injury results from the omission of some duty which the lessor itself owes to the public in the first instance,—something connected with the building of the road,—then we think the company assuming the franchise cannot divest itself of responsibility by leasing its track to some other company. Thus, for instance, in the case at bar, the defendant was charged with the duty of placing sufficient cattle guards before it either used this track which it constructed, or permitted any one else to use it; and it cannot divest itself of responsibility for injuries resulting from such omission by leasing its track to some other company. The injury resulted directly from its own wrong, and not from any mere negligence on the part of the St. Louis & San Francisco Railroad Company. It cannot relieve itself by contracting with some other party to discharge its statutory duty."

The whole subject is elaborately and ably reviewed by Judge Lurton, of the Sixth circuit, in the case of Arrowsmith v. Railroad Co., 57 Fed. 165. Substantially all the cases bearing upon the question are there assembled and carefully reviewed and distinguished. It would be useless to repeat here the history and analysis of the cases which have so satisfactorily been had in that case. We adopt fully that opinion upon the question.

The lease of the railway here in question was authorized by law. The statutes of Illinois (2 Starr & C. § 43, p. 1921) grants full authority to lease the railway in question. It is, however, said that the lessor remains liable because the statute provides no special exemption from liability in cases like these. In answer to this contention, we quote with approval the language of Judge Lurton in the case above referred to:

"Where obligations are imposed by charter or statute law upon a railroad company for the protection and advantage of the general public not having contract relation with it, it may very well be said that a general authority to lease out its road, which contains no provision exempting it from such public obligations, will not absolve it from liability. So, if a railway be in such condition that it is a nuisance when leased out, by reason of the absence of something necessary to its safe operation, or the presence of something dangerous to its safe operation, and this nuisance be continued by the lessee, both the lessor and lessee would be liable,—the one as having created, and the other as having continued, a nuisance. But to say that, after the lessor has, by authority of law, transferred the control and management of its road to another, he shall, unless specially exempted, remain liable for all the torts and contracts of the lessee, is to ignore the contract of lease and the legislative sanction under which it was made. The state, on grounds of public policy, may well refuse its consent to the transfer; but, if it consent, then there is no public policy to authorize the courts to say that the responsibility for the future management and operation of the road has not been exclusively imposed upon the lessee, as the lawful substitute for the company owning the road."

We are of opinion, therefore, that the court below should have granted the request to direct the jury to find a verdict in favor of the lessor, the Chicago & Northern Pacific Railroad Company, and that its final direction of a verdict in favor of the defendants generally was correct so far as it applied to the Chicago & Northern Pacific Railroad Company, and in that respect must be affirmed.

The court below directed a verdict for all of the defendants, upon the ground that, as matter of law, the appellant was shown to have been guilty of contributory negligence, so that, notwithstanding the conceded negligence in the management of the train, there could be no recovery. In the federal courts, contributory negligence is an affirmative defense, the burden of which is cast upon the defendant, unless upon the plaintiff's case such contributory negligence is clearly established; and it is to be passed upon by a jury unless, upon uncontradicted evidence, such negligence is clearly established. When, however, the proof is not convincing upon the question of contributory negligence, and the fact must be arrived at upon inferences concerning which reasonable men may honestly differ, the court will not invade the province of the jury and withdraw the case from their consideration. Railroad Co. v. Meyers, 18

U. S. App. 569, 582, 10 C. C. A. 485, and 62 Fed. 367; Railroad Co. v. Austin, 24 U. S. App. 336, 12 C. C. A. 97, and 64 Fed. 211.

Applying these principles to the case in hand, we cannot say that the conduct of the plaintiff. was so clearly negligent that the court was authorized to withdraw the case from the consideration of the jury. The plaintiff was lawfully upon the premises in the discharge of his duties. He was not a trespasser, and had lawful right to be there, subject, of course, to the duty of exercising ordinary care with respect to his own safety. After instructing Roth with respect to the message, with which he charged him on his return, at which time he was looking to the west, and saw no train approaching, he turned to the east, and proceeded from 45 to 60 feet upon the ends of the ties of the track without again looking for a train. For part of this distance, he was obliged to go upon the ties, in order to pass the switch stand. It is said he should have kept a constant lookout to the west; that the duty of watching for a train was a continuing one, and cannot be put aside; and that, immediately upon passing the switch, he should have walked in the space between the two leads of tracks. It may not be denied that the dark and foggy character of the night, and the dangerous locality, imposed upon him great care; but can the court say that, as matter of law, it was contributory negligence to walk from 45 to 60 feet upon that track without looking behind him, and at what point can the court draw the legal line in that respect, on one side of which shall be care, and on the other negligence? If the plaintiff's testimony be true, in the discharge of his duty he had become acquainted with the ordinary usage of that track, and he knew that the regular freight had gone out some time before, and that no other train was to be expected before 10 o'clock that night. If we may believe his testimony, he did not know that the earlier train was composed of two sections, and he had no reason to expect any train upon that track at that time on that night. Under such circumstances, we are unable to say, as matter of law, that he was required to turn and look to the westward during every 10 or 20 seconds of time, and that failure so to do constituted negligence. That is a question properly within the province of a jury. And so it is, under the facts here developed, with respect to the question whether he should have walked in the space between the two tracks, and not upon the ties. In one view of his testimony,—and, in determining the question before us, we are obliged to view the evidence in the light most favorable to the contention of the plaintiff,—he had only passed upon the ties beyond the switch some 15 or 20 feet. Can the court say that, as matter of law, it was contributory negligence not to have left the ties within that distance? There was a train passing on the K. C. lead. The space of 8 feet between the two leads was narrowed some 2½ feet by the overhanging cars of that train. How can the court say, as matter of law, that it was contributory negligence not to walk nearer to that moving train than 5½ feet, in view of the fact that the plaintiff had no reason to expect any train upon the W. C.

lead? We do not design to assert the proposition of fact stated as veritable truth. Such is not the province of the court. We say that the evidence of the plaintiff, if credited, tends to establish those facts; and upon those facts there are inferences to be drawn which it is not the duty of the court to indulge, but which lie peculiarly within the province of the jury. Upon the case made by the plaintiff, reasonable men might honestly and fairly differ upon the question whether he exercised, on that dark and foggy night, and under the circumstances surrounding him, that care which an ordinarily prudent man would exercise under like circumstances. Such being the case, the question was one peculiarly within the province of a jury to determine.

We are of opinion that the court below erred in withdrawing the case from the jury. The judgment will be affirmed as to the Chicago & Northern Pacific Railroad Company. In all other respects it will be reversed, and the case remanded, with directions to award a new trial as against the other defendants to the record.