KOWALSKI v. CHICAGO G. W. RY. CO.

(Circuit Court, N. D. Iowa, E. D.　January 3, 1898.)

1. FEDERAL COURTS—RULE OF STATE DECISIONS
    As to. questions not involving the constitution or laws of the United States, or affecting the commercial intercourse or business of the country at large, but relating solely to a subject-matter within state control, the federal courts should follow the rules adopted by the state courts.

2. NEGLIGENCE OF PARENT—WHEN NOT IMPUTED TO CHILD.
    The negligence of a father, as the driver of a wagon, in which his infant child was riding, in failing to keep a proper lookout for a train at a railroad crossing, which contributed to the occurrence of a collision in which the child was injured, is not imputable to the child so as to prevent its recovering for the injury from the railroad company, which was guilty of negligence in failing to properly guard the crossing.

3. RAILROADS—NEGLIGENCE—GUARDS AT CROSSING.
    The requirements of the statute law and of the ordinances of a city are not the sole standards for determining whether due care has been observed by a railroad company to guard against accidents at a crossing.

4. SAME—PROXIMATE CAUSE OF ACCIDENT.
    A court cannot say, as matter of law, that because the driver of a wagon failed to hear or heed the signals given by a train on approaching a crossing, and was negligent in failing to keep a proper lookout, the absence of a flagman at the crossing did not proximately contribute to the collision.

Action by Frank Kowalski, by his next friend, against the Chicago Great Western Railway Company, submitted on motion for new trial after verdict by a jury in favor of plaintiff.

N. H. Utt and A. Matthews, for plaintiff.

D. E. Lyon and D. J. Lenehan, for defendant.

SHIRAS, District Judge. The first question presented by the motion for a new trial in this cause is whether, ordinarily, the negligence of a parent is to be imputed to his infant child, so as to defeat the right of recovery on behalf of the infant against one whose negligence has caused personal injury to the child. Briefly stated, the facts are as follows: In June, 1896, a collision occurred at a street crossing in the city of Dubuque between a freight train on the defendant's line of railway and a wagon driven by the father of the infant plaintiff, in which wagon were the parents of the plaintiff, then an infant about three months old. The evidence tended to show that the railway company was guilty of negligence, in that it did not have a flagman at the crossing, and the jury, on this issue, found for the plaintiff. The evidence also tended to show that the father of the plaintiff, who was the driver of the team and wagon, was guilty of contributory negligence in not keeping a proper outlook when approaching the crossing.

The court instructed the jury that the negligence of the driver of the wagon, even though he was the father of the plaintiff, could not be imputed to the plaintiff, so as to defeat his right of recovery for the injuries to his person; and the question presented by the motion for a new trial is whether the court erred in thus instructing the jury.

In giving this instruction the court followed the ruling of the

supreme court of Iowa, which court, in the case of Wymore v. Mahaska Co., 78 Iowa, 396, 43 N. W. 264, expressly held that the negligence of a parent could not be imputed to an infant child under circumstances substantially similar to the case now before the court.    On behalf of the defendant company it is contended that this court is not bound to follow the ruling of the supreme court of the state, but that this court must exercise its independent judgment upon the question, even though it results in variant rules upon the one question between the state and federal courts in Iowa.    The great desirability of securing uniformity in the rulings of courts acting within the same territorial limit is self-apparent, and therefore in matters which are purely domestic, and which are not affected by any provision of the constitution or laws of the United States, or which do not pertain to the general commercial law of the country or other matters within the legislative control of congress, the rule adopted by the supreme court of the state wherein the cause of action arises should be followed by the federal court, acting within the state.

In the case now under consideration it appears that the defendant company, through negligence on its part, injured the person of the plaintiff, and, in order to defeat the liability thus shown to exist against it, it is claimed that, under the law existing in Iowa, the negligence of a parent may be imputed to his infant child; that the parent in this case, by negligence on his part, when driving the wagon over the crossing, aided in causing the accident, and therefore recovery on part of the child is defeated.    In dealing with the question of the duties and responsibilities pertaining to the relation of parent and child, the supreme court of Iowa holds that, in cases of this character, the negligence of the parent is not legally imputable to the child; and therefore it is clear that under the law of Iowa, as declared by the highest court of the state, the defendant company cannot escape liability, for injuries caused to the infant plaintiff by its negligence, by showing that the father of the infant was also guilty of negligence contributing to the accident wherein the plaintiff was injured. Admitting that this is the law upon the subject in the courts of Iowa, the defendant company contends that this court should refuse to follow the rule governing the question in the courts of the state, and should exercise an independent judgment upon the point; but, as already stated, it is not a question arising under the constitution or laws of the United States, or which affects the commercial intercourse and business of the country at large, but it pertains solely to a subject-matter wholly within state control, and touching which each state is at absolute liberty to adopt the rule deemed most suitable for its circumstances.    Thus, in the case of In re Burrus, 136 U. S. 586, 10 Sup. Ct. 850, in which the United States district court in Nebraska had undertaken, upon a writ of habeas corpus, to determine the conflicting claims of a father and grandparent to the custody of an infant, the supreme court held that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."    This being true, and it being also true that the supreme court of the state holds that

the negligence of a father is not imputable to a child, so as to defeat a recovery for personal injuries to the child, caused by the negligence of a third party, upon what defensible theory should this court refuse to follow the rule of the state court, and assert the right to establish an antagonistic position upon the mutual duties and responsibilities growing out of the relation of parent and child? Even if it be held that the question is such that this court is not strictly bound to follow the ruling of the supreme court of the state, nevertheless it belongs to that class of questions with regard to which it is highly desirable that uniformity of ruling should be maintained between the several courts, exercising jurisdiction within the territorial limits of the same state; and for that reason I should deem it my duty to accept the decision of the supreme court of the state, as a proper guide to be followed, in determining the matter in dispute.

But, furthermore, if the question was open to consideration on principle, it would not change the result; for, in my judgment, the case is not one wherein the negligence of a parent ought to be availed of as a defense by one whose own negligence has caused injuries to the person of the infant plaintiff. The facts of the case are these: A collision occurred at a street crossing between a railway train operated by the defendant company and a wagon driven by one Albert Kowalski, in which wagon was the plaintiff, with other parties. The railway company and the driver of the wagon were each guilty of negligence causing the collision, and the plaintiff was injured. Under the view taken in Thorogood v. Bryan, 8 C. B. 115, and the cases in this country based thereon, the negligence of a driver was held imputable to the occupants of the vehicle, and, if that view was still in force, if would follow in this case that none of the occupants of the wagon could recover against the defendant company, no matter how gross its negligence might have been, because the contributory negligence of the driver of the wagon, being legally imputable to them, would defeat a recovery. The reasoning, however, upon which this view of the law was based, is no longer accepted by the great majority of the courts in this country; and since the ruling of the supreme court in Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, it is generally held that there is not a legal identity between the driver of a vehicle and those who occupy the vehicle as passengers or upon invitation of the driver. For illustration, suppose, in this case, Kowalski had had in his wagon two children beside his own, one of which he was bringing to the city of Dubuque as an accommodation to a friend, and the other he was bringing for a price paid him, and all three had been injured in the collision. The negligence of which the defendant company seeks to avail itself as a defense is the negligence of Kowalski as the driver in control of the wagon. Under the rule in Little v. Hackett, the negligence of the driver would not defeat a recovery on behalf of the two infants who were not the children of Kowalski, because the negligence of the driver, as such, is not imputable to the occupants of the vehicle. Why, then, would such negligence defeat a recovery in the third case? Kowalski, being in charge of the wagon, owed to all the children in the supposed case just the same degree of

care, and the defense is based upon the fact that, as the driver of the wagon, he failed to exercise proper care in approaching the crossing, and heedlessly drove upon the same, and thus aided in causing the accident. The negligence complained of is in fact that of Kowalski, as driver, which, under the authorities, is not imputable to the occupants of the wagon, and therefore the position is taken that Kowalski, in his relation of parent, was guilty of negligence, for which the child must be held responsible.

In fact, however, the accident had nothing to do with the family relation existing between the occupants of the wagon. The cause of action and the right of action on behalf of the plaintiff against the defendant company grow out of the negligence of the company in not having the proper safeguards at the crossing to give warning of the approach of the train, and the duty of the company in this respect, and its liability for accidents resulting from a failure to perform its duty, have no possible connection with or relation to the obligation and responsibilities growing out of the family relation. The later authorities declare the rule to be that, in cases wherein the parent sues for damages resulting to him from an accident wherein his child is hurt, as for the recovery of the expenses of taking care of the injured child, or for the deprivation of the services of the child, then the negligence of the father contributing to the accident may be availed of as a defense to his action; but where the child sues for the recovery of damages resulting from injuries to his own person, and caused by the negligence of a third party, the latter cannot escape responsibility for the consequences of his own negligence by averring that the parent of the plaintiff was also guilty of negligence.

The next ground relied on in support of the application for a new trial is that the court erred in submitting to the jury the question whether the railway company was chargeable with negligence in not having a flagman at the crossing. In the petition in the case the plaintiff charged negligence against the railway company on several other grounds, but the jury were instructed that the evidence failed to support the charges of negligence based on the action of the employés in charge of the train, and that there was only one ground for their consideration in connection with the question of the alleged negligence of the company, and that was whether the crossing, in view of its situation and surroundings and of the amount of travel over the same, was of such a nature that ordinary care on part of the railway company required the keeping of a flagman at the crossing, even though the statute of the state and the ordinance of the city did not so require. That the requirements of the statute law and of the general ordinance of the city are not always the sole standards for determining whether due care has been observed at railway crossings is settled by the rulings of the supreme court in Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, and of the court of appeals for this circuit in Railway Co. v. Netolicky, 14 C. C. A. 615, 67 Fed. 665. The evidence showed beyond question that the crossing was one whereat the view of parties coming along the public street was obstructed by buildings, trees, and the like, so that a train coming in the direction

that the one which struck the wagon was coming could not be readily seen until the persons on the street were within 20 or 30 feet of the rails forming the railway track, and the evidence was clearly such that it required the court to submit this charge of negligence to the jury, and in the judgment of the court the finding of the jury that the crossing was of such a nature that a flagman ought to have been stationed thereat finds ample support in the evidence.    The contention of counsel for the railway company that, owing to the ruling of the court that the negligence of the driver of the wagon could not be imputed to the child, the jury might not have rightly apprehended the real issue submitted to them, and might have construed the charge to mean that the jury could not attribute the happening of the accident to the action of Kowalski, as driver of the wagon, and, so construing it, might have assumed that they were not at liberty to find that the accident was not due to negligence on part of the railway company, but was caused solelv by the negligence of Kowalski, in driving heedlessly upon the track, has certainly much of plausibility to sustain it; yet it is certainly true that the court did not so instruct the jury, and it cannot be assumed that the jury failed to understand the charge that was in fact given.    The jury was expressly instructed that the case against the railway company was based upon the charge of negligence; that merely proving that a collision occurred between the train and the wagon at the crossing would not make out the case against the defendant; that it must be shown that the railway company had been negligent, and that its negligence was the approximate cause of the accident; and then the attention of the jury was called to the particular charge of negligence which was submitted to them, to wit, the question whether the crossing was of such a nature that, in the exercise of ordinary care, the railway company ought to have kept a flagman thereat; and, further, that, even if they found that a flagman ought to have been kept at the crossing, they could not find against the company, unless they also found that the failure to have a flagman was a proximate cause of the accident, or, in other words, that the relation of cause and effect must exist between the negligence and the accident.    If the finding of the jury on this question was clearly against the weight of the evidence, that fact might be relied on as evidence that the jury had in some way failed to properly construe and apply the instruction given them; but, as already said, the finding of the jury is in accord with the evidence, and is sustained thereby, and the court cannot assume that the jury misunderstood the charge of the court on this branch of the case.

The next contention is that, even if it be admitted that the crossing was of that character that it required the presence of a flagman thereon to give due warning to persons upon the highway of the approach of railway trains, nevertheless the facts show that the absence of a flagman had no connection with the accident; that the parties in the wagon took no notice of the other warnings that were given; and that the action of the driver of the wagon was such that it proves that he simply entered into a race with the approaching train in the effort to pass over the crossing before the train reached it; and that the pres-

ence or absence of a flagman could have no connection with the accident. The testimony of the persons in the wagon was to the effect that they did not see the train until the horses' heads were within a few feet of the railway track. The testimony of all the defendant's witnesses was to the effect that, when the horses were close to the track, the driver threw up the reins in the apparent effort to stop, and then dropped them, apparently for the purpose of urging the horses over the crossing. This evidence clearly tends to support the testimony of Kowalski and his wife that they did not see the train until they were nearly on the track. Mrs. Kowalski testified that the horses' heads were about six feet from the rails when she first saw the train, and other witnesses estimated the distances when the driver checked up the horses at from a few up to about 10 feet. The persons in the wagon must therefore have been fully 20 feet from the track, or at about the point where it first becomes possible to obtain a view for any considerable distance up the track, and therefore the evidence tends to show that they did see the train at about the place where a good view up the track could be had. The negligence chargeable against the adults in the wagon is that knowing the nature of the crossing, and the impossibility of seeing any distance up the track, until they had reached a point so close to the track that the horses' heads would be within from 6 to 10 feet of the rails, they drove down to the crossing at a smart pace, without halting or slowing up the speed of the horses in order that they might properly exercise their senses of sight and hearing, and the jury properly found that there was negligence on part of Mrs. Kowalski that would defeat any right of recovery on her part. The fact, however, that they failed to see or hear the coming train, or the signals given by gong or bell, does not prove that they would also have failed to see and hear the signals given by a flagman had one been stationed at the crossing. He would have been right on the crossing, in plain sight of the persons in the wagon, long before they reached a point of danger. His signals, if he properly performed his duty, would in all probability have been seen and understood by the occupants of the wagon, and thus they would have received a warning of danger in season to have avoided it without risk to themselves. By the finding of the jury in this case it is determined that, for the proper protection of persons lawfully using the highway crossing in question, the duty was imposed upon the railway company of having a flagman thereat to give warning of the approach of its trains. It is admitted that there was no flagman at the crossing at the time this accident happened, and thus it is shown that the plaintiff in this case was subjected, in using the crossing, to all the additional hazards and dangers resulting from the failure to keep a flagman thereat, and the evidence was such as to justify the finding that this failure, constituting negligence on part of the railway company, aided in causing the accident and the resulting injuries to the person of the plaintiff.

The last point presented by the motion for a new trial is that the amount of damages awarded, to wit, $2,000, is excessive and not warranted by the evidence. The testimony on behalf of the plaintiff tended

to show that the child received a blow on the head; that there is a slight displacement of the parietal bone on one side of the head; that for some weeks after the accident the child's neck was twisted to one side; that, while the child can now readily turn his head in any direction, there still remains a slight atrophy of the muscles on one side of the neck, creating a tendency to carry the head slightly drooped; that since the accident the child has been subject to spasms, which did not exist before the accident; and that, if these result from the injury to the head, they may develop into a serious form. The testimony on behalf of the defendant tended to deny the existence of these injuries, and to minimize the effects thereof. This conflict in the evidence it was the province of the jury to consider, and to determine what the evidence established with regard to these particulars. If the evidence adduced by the plaintiff is accepted as a fair statement of the injuries actually caused the plaintiff, then it cannot be said that the verdict is so excessive in amount as to justify the court in interfering with the finding of the jury on this question, and it was clearly within the province of the jury to determine whether the evidence on behalf of the plaintiff on this question exceeded in weight that adduced by the defendant. The motion for new trial is therefore overruled, and judgment will be entered in favor of the plaintiff in accordance with the verdict of the jury.