JESSIE DOLAN, Appellee, v. W. H. BREMNER, Receiver of Minneapolis & St. Louis Railroad Co., Appellant.

No. 43011.

DECEMBER 17, 1935.

Boardman & Cartwright, for appellant.

Peisen & Soper, and Burr Towne, for appellee.

DONEGAN, J.—The accident out of which this action arose happened at a point near the northwest corner of the town of Ackley in Hardin county, Iowa, where paved highway No. 20 crosses the main line and two side tracks of the Minneapolis & St. Louis Railroad Company. The defendant, W. H. Bremner, is the receiver of the railroad company. On the night of October 10, 1933, between 8 and 9 o'clock, the plaintiff was a guest in an automobile owned and operated by Dr. J. K. Stipp, which was going eastward on the highway.

The evidence tends to show that on this night mist or fog was overhanging the lowlands and low portions of the paved highway. There is evidence tending to show that, as the highway approaches the railroad crossing from the west, there is a gentle

slope downward to a point about 15 feet west of the railroad tracks, and that from this point there is a slight incline upward, the total rise being estimated at from 8 to 12 inches. The driver of the car in which the plaintiff was riding testified that, as he was going down the incline and approaching the railroad tracks, he had slowed his car down to a speed of 20 to 25 miles per hour; that his headlights were lighted, and, when obstructed by the fog or mist, he could see the roadway for more than a block ahead of his car; that, as he came down the incline toward the railroad tracks and about the time he reached the point where the slight elevation began toward the railroad tracks, the rays from his headlights appeared to be lighting up the road ahead of him, but that, as he proceeded up the incline toward the railroad tracks and had about reached the first or most westerly track, he suddenly realized that there was a fog hanging over the road at this point and that there was a railroad refrigerator car standing across the highway on the easterly railroad track; that he applied his brakes as quickly as possible and tried to turn his car to the right, but was unable to prevent his automobile from colliding with the side of this car. As a result of this collision, the plaintiff received the injuries on account of which she brought this action.

It further appears from the evidence that there was the ordinary cross-arm railroad warning sign on the north side of the paved highway to the east of the railroad tracks, but, on account of the train, this sign was not visible to the west of the crossing. So far as the record shows, this was the only warning sign of any kind to apprise travelers on the highway of the railroad crossing. Plaintiff based her claim for damages on two grounds of negligence, as follows:

"1. The defendant, through his agents and employees, failed to maintain proper signs, signals, guards or other warning devices to properly warn and advise the plaintiff of the presence of a railroad crossing intersecting with highway No. 20.

"2. The defendant, through his agents and employees, failed to maintain a lookout or guard at the said crossing to warn approaching vehicles of the presence of the said railroad intersection in the said highway and of the presence of an obstruction upon the said highway of this particular kind and nature."

In its answer the defendant denied all allegations of the petition not expressly admitted; admitted the happening of the ac-

cident at the time and place alleged in the petition; specifically denied that such accident was due to the negligence of the defendant or its agents and employees; and averred that the accident was caused by the negligent operation of the motor vehicle in which plaintiff was riding. At the close of plaintiff's evidence, the defendant filed a motion for a directed verdict in its favor. Upon such motion being overruled, the defendant rested and again filed such motion with some additions thereto. This motion was also overruled, the case was submitted to a jury, and a verdict was returned in favor of the plaintiff, upon which judgment was entered by the court. From such judgment and rulings of the trial court, the defendant appeals.

Several errors are set out and relied upon for reversal. The first allegation of error to which we will direct our attention is, in substance, that the evidence was insufficient to show that there was any negligence on the part of the defendant which was the proximate cause of the accident and injuries complained of. It appears without dispute in the evidence that the railroad company did comply with the requirement of our statute by maintaining on the east side of its railroad tracks and to the north side of the highway the ordinary cross-arm warning sign. It is the contention of the appellee, however, that the particular crossing in question is unusually dangerous, and that, in addition to the statutory sign, ordinary care on the part of the railroad company would have required other signs or warning signals to apprise the drivers of vehicles upon the highway of the presence of the railroad crossing. It may be conceded that, as contended by appellee, if a railroad crossing is unusually dangerous, a railroad company may be under obligation to install other warning signs or signals in addition to those required by statute. No general definition can be given as to what constitutes an unusually dangerous railroad crossing. Whether or not a railroad crossing is unusually dangerous must depend upon the facts in each particular case. The facts in regard to this crossing, upon which the plaintiff's contention is based, may be stated in general terms about as follows: That three tracks of the defendant crossed the state highway at this point; that to the north of the highway and to the west of the railroad tracks there is a large brick building which shuts off the view of the railroad tracks north of the highway to persons traveling eastward thereon; that frequent passenger trains and large freight trains travel over this crossing; that the crossing is located

on the edge of a low draw or slough in which banks of mist and fog are apt to be found; that the highway is a paved east and west trunk highway extending from Sioux City, Iowa, eastward through Dubuque and Chicago, with its eastern terminus at Albany, New York, and carries more traffic than any other trunk highway in Iowa excepting two; that, on account of there being a downward slope toward the crossing from the west, which ends about 15 feet west of the westerly railroad track and then rises slightly toward the railroad tracks, the lights from cars driving eastward do not light the highway at the crossing until this slight ascent toward the railroad tracks is reached; and that; because of the absence of any warning signs on the highway to the west of the crossing, persons traveling thereon are not apprised of the presence of the crossing until they are almost upon it.

While the evidence shows that this highway carries heavier traffic than most of the trunk highways in this state, the only evidence as to the railroad traffic is that about four trains each way, or a total of eight trains per day, cross this highway, and there is nothing to show that the dangers occasioned by the amount of traffic over this crossing were greater than those connected with dozens, if not hundreds, of other railroad crossings in this state. The brick building at the northwest corner of the intersection of the highway and railroad tracks, to which reference has been made, while it might interfere with the view of persons approaching the crossing on the highway from the west as to trains coming from the north, could in no way have interfered with the vision of the railroad crossing itself. The evidence as to a low draw or slough to the east of the railroad tracks, over which a fog was seen hanging probably an hour or more before the accident, fails to show how far this draw or slough is east of the railroad tracks or that its proximity to the crossing presented such an unusual condition that the railroad company would be bound to take notice that it would be the cause of fogs overhanging the crossing and interfering with the visibility of trains thereon. As to the contour of the highway west of the railroad crossing, we think there is nothing in the evidence that shows any danger resulting from this condition that would place any responsibility upon the railroad company. Appellant's evidence tended to show that from a point a considerable distance west of the railroad crossing the highway sloped slightly downward toward the railroad crossing, this downward slope ending at a point approximately 15 feet

west of the tracks, and that, from this point to the railroad tracks, there was a very slight incline of from 8 to 12 inches in the 15 feet. If there be any such break in the grade or incline toward the railroad tracks, the photographs introduced as exhibits fail to show it, and it must certainly be of such trivial nature that it could have no such effect on the direction of the rays from the lights of the car in which appellee was riding as is claimed by appellee.

Conceding that the appellee and the driver of the car in which she was riding may have been deceived by fog or mist overhanging the crossing, which because of the color of the railroad car made its presence on the crossing indiscernible in such fog or mist, we do not think there is anything in the evidence that would impose upon appellant the duty of anticipating that such a condition would exist, or that would impose upon appellant the duty of anticipating that appellee and the driver of the automobile in which she was riding would not, by the exercise of ordinary care, avoid the dangers incident to such a condition if it did exist. On the contrary, we think the railroad company would be justified in assuming that, if there was a mist or fog upon the highway, the driver of the car in which appellee was riding would reduce his speed so that he would not travel into or through such mist or fog at any greater rate of speed than would enable him to stop within the distance in which he could see objects ahead of him.

Even if it be conceded, however, that the evidence was such that it made a question for the jury as to the necessity of other and additional warning signs or signals, and, even if the appellant railroad company may have been negligent in that respect, we think the evidence insufficient to show that such negligence, if any, on the part of the railroad company was the proximate cause of the accident and injuries to the appellee. Railroad tracks necessarily cross public highways, and it is necessary that trains at times be stopped upon such public highway crossings. When this is done and the railroad company is making reasonable and legitimate use of such crossing, the presence of the train itself is sufficient warning to any one using the highway, and there is no duty upon the part of the railroad company to anticipate that one using the highway will not see such train and be apprised of its presence as fully as he would be if other signs or warnings were used.

Appellant cites many cases in support of the contention that

the purpose of warning signs and signals at railroad crossings is to apprise persons using the highway of the danger of approaching trains, and not to warn them of the presence of a train which is actually on the crossing over the highway. In the case of Gage v. Boston & Maine Railroad, 77 N. H. 289, 90 A. 855, 856, L. R. A. 1915A, 363, plaintiff, at 11 o'clock on a dark and foggy night, drove his automobile into the fourteenth car of a freight train slowly moving over a public highway crossing. The plaintiff alleged that, because of the weather conditions, he was prevented from discovering the presence of the train until it was too late for him to avoid a collision, and that the defendant railroad company was negligent in failing to provide gates or lights or a crossing flagman at the crossing occupied by the train. In the course of the opinion in that case it is said:

"When cars are upon a crossing under such circumstances the fact that they are there is a sufficient warning to the traveler upon the highway that he cannot occupy the crossing at the same time. No other signals or warnings are necessary or required in the absence of a statute imposing such a duty upon the railroad. As there is no statute or municipal regulation requiring the defendant to provide lights at this crossing the mere fact that there were none on the night of the accident does not prove the negligence of the defendant. * * *

"The defendant's cars were rightfully occupying the crossing, and the trainmen were exercising due care, so far as the management of the train in approaching and passing over the crossing is concerned. The plaintiffs were not injured by being run into by the defendant's locomotive, but by running into the defendant's freight car as it was slowly passing over the crossing. * * * If it is conceded that the trainmen were chargeable with knowledge that automobiles were frequently driven over the crossing in the evening, were they also chargeable with knowledge that they were liable to be driven at such a rate of speed that they could not be stopped before reaching the crossing after the cars upon it became visible? Suppose, instead of the place being the intersection of a highway and the railroad, it had been the crossing of two highways, and the plaintiffs had run into the side of a load of logs which were being transported over the crossing. * * * If the driver of the approaching automobile could see the obstruction in time to avoid colliding with it, reasonable men could not

find that it was the duty of the driver of the team to have a lighted lantern on the side of his load toward the automobile as a warning that the crossing was occupied, or to use some other extraordinary precaution to convey that information. * * *

"For similar reasons, the trainmen in the case at bar were justified in acting upon the assumption that an automobile would not be unnecessarily driven into the side of their train. * * *

"In order to charge the defendant, it must be found from some substantial evidence that its servants, in the exercise of ordinary care, would have understood that they were maintaining at the crossing an obstruction which, on account of the darkness, was a dangerous obstruction to people riding in an automobile, driven at a reasonable rate of speed and equipped with strong lights. To hold that such evidence exists in this case is to overturn the rule that a verdict based upon conjecture cannot stand."

In Trask v. Boston & Maine R. R., 219 Mass. 410, 106 N. E. 1022, 1024, the plaintiff, on a dark and hazy night, drove an automobile into the side of a train on the crossing on an obscure track in a village. In holding that the railroad company was not liable, the court said:

"In order to charge the defendant with negligence it must be found that its employees, in the exercise of reasonable care, would have known that on account of the darkness the cars upon the crossing were such an obstruction that people traveling along the highway, in an automobile, at a reasonable rate of speed, properly equipped with lights and carefully operated, would be liable to come in collision with them. We are of opinion that upon the evidence the conditions shown were not such as to warrant a finding that the defendant was negligent in failing to provide lights or a flagman, or to give other warning.

"The defendant and its servants, in the exercise of reasonable care, were justified in believing that travelers in automobiles properly lighted and driving at reasonable speed would observe the cars upon the crossing in time to avoid coming in collision with them."

In the case of Schmidt v. Chicago & N. W. R. Co., 191 Wis. 184, 210 N. W. 370, an automobile was driven into the side of a moving freight train in the nighttime. The railroad company had voluntarily installed an electric alarm bell and wigwag at

the crossing, but at the time of the accident neither of these signals was working. The court, in its opinion, said:

"While it may be conceded that these various signal devices were not working properly, we are confronted with the fact that the train was actually and physically upon and passing over the crossing at the time of the accident. It is well known that signal devices such as those in question are installed by railroad companies, sometimes voluntarily and sometimes pursuant to the requirements of law, not for the purpose of warning travelers upon the highway of the actual presence of a train upon the crossing, but for the purpose of warning them of the approach of a train. Conceding that the plaintiff and her companions in the automobile had a right to rely upon the operation of these signals to warn them of an approaching train, it by no means follows that they had any right to rely upon the operation of these signals for the purpose of warning them of the actual presence of a train passing over the crossing. It cannot be held that the railroad company should have anticipated that by reason of the defective operation of these signals plaintiff and her companions, or any one else traveling along the highway, would collide with a freight train actually passing over the crossing. If any authority for this rather self-evident proposition be needed, the cases of Nadasky v. Public Service R. Co., 97 N. J. Law 400, 117 A. 478, and McGlauflin v. Boston & Maine R. R., 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E, 790, may be cited."

In the case of Crosby et al. v. Great Northern Ry. Co., 187 Minn. 263, 245 N. W. 31, 32, the plaintiff was a passenger in an automobile which was driven into the side of one of the cars of a freight train at the edge of a village in the nighttime. The claim of the plaintiff was that the conditions surrounding the accident required the use of some precaution on the part of the railroad company, in addition to the requirement of the statute. The court in its opinion, after citing numerous authorities to the effect that the purpose of signals and warnings at railroad crossings is for the benefit of drivers on the highway so as to warn them of approaching trains, and not for the purpose of preventing automobile drivers from running into the side of a train, said:

"Common experience is that the occupation of a highway crossing by a train is visible to travelers on the highway includ-

ing automobile drivers whose cars are properly equipped with lights and who exercise ordinary care. It would seem that a train upon a crossing is itself effective and adequate warning. It has always been so considered. This is so whether the train is moving or standing. A railroad company is under no obligation to light an ordinary highway crossing at night so that its trains thereon may be seen by travelers.''

In the case of Butters v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, 214 Iowa 700, 708, 243 N. W. 597, 601, an automobile, in which the plaintiff was riding as a guest, was driven into the side of a moving train at a railroad crossing in a small town. At the time of the accident it was dark and plaintiff alleged that the crossing was unusually dangerous and that the defendant should have given more than the ordinary notice of warning of the presence of the train. The plaintiff was denied a recovery and Mr. Justice Wagner, in writing the opinion, quoted with approval and italicized that portion of the opinion in the case of Gage v. Boston & Maine R. R., supra, wherein it was said:

" 'There is no contention that these precautions would be necessary in the daytime, or at any time when the occupation of the crossing by one or more cars would be visible to a traveler in time to allow him to stop before reaching the crossing. When cars are upon a crossing under such circumstances the fact that they are there is a sufficient warning to the traveler upon the highway that he cannot occupy the crossing at the same time. No other signals or warnings are necessary or required in the absence of a statute imposing such a duty upon the railroad; * * * ,' ''

In the case of Olson v. Chicago, Great Western Ry. Co., 193 Minn. 533, 259 N. W. 70, 71, the facts were in many respects similar to those in the case at bar. The plaintiff was a passenger in an automobile driven by her husband. The automobile was turned into a ditch in order to avoid running it into the side of a freight train which was crossing the highway upon which the plaintiff and her husband were traveling. The crossing sign was on the opposite side of the train from the automobile and could not be seen by plaintiff or her husband. The night was dark and the color of the train blended with the surroundings. Because

of these facts, the driver of the car was unable to see the train until almost upon it, and it was contended that there should have been additional warning signs. The court referred to its decision in the case of Crosby v. Great Northern Ry. Co., 187 Minn. 263, 245 N. W. 31, and refused to allow the plaintiff to recover. In the syllabus prepared by the court it is stated:

"Statutory signals for trains passing over highway crossings are exclusively for the benefit of travelers on the highway so as to warn them of approaching trains. Where a train is actually occupying such crossing when the driver upon the highway arrives, the train is itself an effective and adequate warning."

The appellee has not cited and we have been unable to find any authority in which the absence of statutory or other warning signs or signals at a railroad crossing has been held to be negligence constituting the proximate cause of an accident, where an automobile upon a highway is driven into the side of a railroad car standing upon or moving across such highway. As further supporting appellant's contention that the purpose of warnings or signals at railway crossings is only to protect the public from approaching trains and not to warn of the presence of trains actually upon the crossing, and that, where an automobile is driven into the side of a railroad car occupying a highway crossing, the absence of warning, either statutory or otherwise, cannot be the proximate cause of the collision and damages resulting therefrom, see Gilman v. Central Vermont Ry. Co., 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102; Nadasky v. Public Service R. Co., 97 N. J. Law 400, 117 A. 478; Jacobsen v. New York, Susquehanna & Western R. Co., 87 N. J. Law 378, 94 A. 577; Brinson v. Davis, 32 Ga. App. 37, 122 S. E. 643; Scott v. Delaware, L. & W. R. Co., 222 App. Div. 409, 226 N. Y. S. 287; Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750; St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; Philadelphia & R. R. Co. v. Dillon, 1 W. W. Harr. (31 Del.) 247, 114 A. 62, 15 A. L. R. 894; McGlauflin v. Boston & Maine R. R., 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E, 790; Brown v. So. Ry. Co. (C. C. A.), 61 F. (2d) 399; Pennsylvania R. Co. v. Huss, 96 Ind. App. 71, 180 N. E. 919.

We reach the conclusion, therefore, that there was no negli-

1154

gence proved on the part of the defendant railroad company that constituted the proximate cause of the accident and injuries for which recovery is sought in this action. In view of this conclusion, we deem it unnecessary to prolong this opinion by a discussion of other alleged errors.

The judgment and rulings appealed from are hereby reversed.—Reversed.

KINTZINGER, C. J., and all Justices concur.