## THOMSON v. STEVENS.

### No. 11340.

Circuit Court of Appeals, Eighth Circuit.

Oct. 11, 1939.

Rehearing Denied Nov. 2, 1939.

James C. Davis, Jr., of Des Moines, Iowa (A. A. McLaughlin and George E. Hise, both of Des Moines, Iowa, on the brief), for appellant.

John A. Senneff, Jr., of Mason City, Iowa (John A. Senneff, of Mason City, Iowa, on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a judgment entered upon the verdict of a jury in a civil action brought by the Administratrix of the Estate of Herbert Stevens against the Trustee in Reorganization of the Chicago and North Western Railway Company, to recover damages for the death of Stevens, who was killed at Dumont, Iowa, at about 9:30 o'clock P. M. on January 28, 1936, as the result of a collision between the automobile in which he was riding as a guest passenger and a gondola freight car of the Railway Company which was standing upon the grade crossing at Dumont, where

the tracks of the Railway Company intersect Highway Number 10, a paved and well-traveled highway. The parties will be designated as they were in the court below.

The case has been tried twice. The first trial resulted in a verdict for the plaintiff. There was an appeal by the defendant and a reversal upon the ground that, under the testimony of the driver of the automobile, a finding that the negligence of the defendant, if any, was a proximate cause of the collision and the death of the plaintiff's intestate, was not justified. See Megan v. Stevens, 8 Cir., 91 F.2d 419, 113 A.L.R. 992. Upon a retrial of the case, the plaintiff again prevailed. The testimony of the driver of the automobile differed in substantial respects from that which he gave upon the first trial. On the first trial his evidence was that he first saw the freight car when approximately 70 feet from it and in time to stop; that he put on his brakes at once, but that ice under the snow caused his automobile to skid into the gondola car. On the second trial, he testified, in substance, that he first saw the freight car as he had stated upon the first trial, but was unable to stop his automobile within 75 feet; that he had since been told that there was no ice under the snow; and that he did not know that there was any ice under the snow. He also testified upon the second trial that he was prevented from seeing the freight car sooner than he did see it by a flurry of snow.

The important question now presented is whether, taking that view of the evidence most favorable to the plaintiff, it was sufficient to support a finding that the defendant was guilty of any actionable negligence in connection with the blocking of the crossing with the freight train.

While the plaintiff charged that the defendant was negligent in six particulars, the grounds of negligence can be reduced to three: (1) Unnecessarily obstructing the crossing; (2) failure to protect the traveling public by giving warning in addition to the mere presence of the freight car across the track; (3) occupying the crossing for an unreasonable and unnecessary period of time.

The controlling law is that of Iowa. See Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. If, under the law of that State, there was evidence which would justify a recovery by the plaintiff upon any of the grounds of negligence alleged, the trial court did not err in denying the motion of the defendant for a directed verdict; but if there was no such evidence, it was error to deny the motion.

The facts—without going into unnecessary detail—are, in substance, as follows: The crossing was level and unobstructed as to view and was of the usual type and with the usual warning signs. Highway Number 10, which runs east and west, was 28 feet wide, and there was a highway sign about 375 feet east of the tracks, and a cross-arm sign in the northeast angle of the intersection, reading "Railroad Crossing". On the evening of January 28, 1936, Herbert Stevens was riding with Lewis Fisher, an experienced driver, who was operating a 1933 Chevrolet automobile equipped with good lights and good brakes. In the early morning of that day Fisher had driven Stevens from Crystal Lake, Iowa, to Iowa City to visit Stevens' wife, who was in the hospital there. In going east to Iowa City they had used Highway Number 10. They were returning west from Iowa City upon the same highway when the accident occurred. There was snow upon the pavement and for some two hours before the accident it had been snowing. "The snow wasn't falling so terribly heavy. There was quite a wind. At times the vision would be fairly clear; then at times the wind would seem to whip the snow in front of you and you couldn't see very far." There was a windshield wiper on the driver's side of the windshield only. His side of the windshield was kept clean at all times. Sometimes the driver could see 100 feet or more ahead, but he could not see that far when the wind blew snow in front of the automobile. He was driving between 30 and 35 miles an hour as he approached the crossing at Dumont. He first saw the freight car when he was within 50 to 75 feet of it. He was then passing a roadway which other evidence in the case shows was approximately 70 feet from the tracks. He put on his brakes. The automobile slowed down a little, and it seemed to skid just a little as he reached the freight car. A sudden gust of snow had prevented his seeing the train sooner. There had been occasional gusts previously. His estimate of the distance within which he could have stopped his automobile at the speed he was traveling was 75 feet. There was "some snow" on the side of the freight car. There was no flagman

at the crossing to warn approaching cars, and no lights at or near the freight car. The train was an extra freight train which was on its way north from Belle Plaine, Iowa, to Mason City, Iowa. When it left Belle Plaine it had 40 cars. Before reaching Dumont, it had stopped at Traer, Parkersburg and Kessley. It had set out one car at Traer, so that when it reached Dumont it consisted of 39 cars. The car behind the engine was a coal car which was to be delivered at Dumont. The train came in on the main line track and stopped at a point just south of the switch leading from the main track to the passing track. The purpose of stopping was to set out the one car consigned to Dumont. The train crew consisted of an engineer, a fireman, two brakemen and a conductor. Both brakemen, who were riding in the engine, dropped off just before it came to a stop. One of them, Rusk, went back to uncouple the coal car from the train. After uncoupling, he signalled the engineer to pull ahead. He rode the car beyond the passing track switch. He then opened that switch, and from there proceeded to open the switch which led from the passing track to the industry track, where the car of coal was to be spotted. The engineer backed the engine and coal car through the switch into the passing track, and thence to the industry track, where the car of coal was left. The other brakeman, Dollash, had proceeded to the point on the industry track where the car of coal was to be delivered. When the engineer had spotted the car, Dollash uncoupled it from the engine. At or about that time, the engineer, who had seen the lights of an automobile coming from the east upon the highway, and had not seen the lights shining under the train at the crossing, told Dollash that he thought it might have run into the train and that he (Dollash) had better look before the train was moved. Dollash then ran back to the depot, deposited the waybill for the car in a box, and went to the crossing. He found that the Fisher automobile had collided with the train, and gave stop signals with his lantern, which were seen by the engineer, at or about the time that the engine had completed its movement from the industry track to the passing track to the main track, and had been coupled to the train. When the train had stopped at Dumont, the conductor had gone to the rear of the train to warn any trains which might be approaching from the south. The

train crew's estimate of the time which was occupied in setting out the car at Dumont and completing the movements above referred to was approximately five minutes.

Mr. and Mrs. Aukes, witnesses for the plaintiff, testified that the train had blocked the crossing for about twenty minutes when the accident occurred. They lived in a trailer-house about 540 feet east of the crossing. Mr. Aukes was outside of his house and about 300 feet east of the crossing when the train pulled in. He could see the train as it pulled in. He returned to the house and after he had been there some time he heard a crash. He looked out of a window, and sometimes could see the train and sometimes not on account of snow. The snow was whipping. "It was not snowing so awful bad, but it was whipping, and sometimes you could see it [the train] real plain, and other times you couldn't hardly see it at all."

There is no substantial dispute in the evidence except with respect to the extent to which visibility was affected by falling or blowing snow and as to the length of time that the crossing was blocked.

According to Fisher, he could see 100 feet ahead except during snow flurries. He saw the freight car about 70 feet ahead during a snow flurry. Mr. Aukes was able to see the train from a distance of 300 feet without the aid of lights, when it pulled into Dumont. After he heard a crash and looked from the window of his trailer, he could sometimes see the train 540 feet away. It is apparent that, while the snow affected visibility at times, it did not prevent an object as large as a gondola car from being visible to a driver upon the highway for some substantial distance ahead.

There is no dispute with respect to the fact that the train was placed where it was necessary that it be placed if the coal car was to be set out at Dumont in the manner selected by the train crew. According to the undisputed evidence, the business of delivering this car of coal and of returning the engine to the train had not been completed by the train crew when the collision occurred and the crew were then still engaged in completing the necessary engine movements. There was no evidence which would justify a conclusion that the crew, in selecting the method for setting out the car at Dumont, did anything which was unusual or not in accord-

ance with the customary and ordinary practice of railroads in delivering such cars. There was evidence given, on cross-examination, by the members of the crew to the effect that the train could have been stopped south of the crossing, and the car delivered by taking it north beyond the switch to the passing track, which would have required three movements over the crossing: (1) When the engine proceeded north with the car, (2) when the engine returned to couple onto the train, and (3) when it pulled the train north after having delivered the car. There was also evidence that the train could have been cut at the crossing so as to leave the crossing unobstructed for a portion of the time. This would also have necessitated three movements over the crossing. Whether stopping the train south of the crossing or cutting the train at the crossing would have reduced or increased the hazard to those who might be using the highway is left to conjecture.

It seems to us that the evidence of the plaintiff's witnesses to the effect that the train actually obstructed this crossing for twenty minutes before the collision occurred is equally consistent with two hypotheses: one, that the train crew were dilatory in setting out the coal car consigned to Dumont; the other, that to perform the necessary operations in connection with setting out the car required twenty minutes. The fact that they testified that it took them five minutes to complete this operation, and that the plaintiff's witnesses said that the train was there twenty minutes, does not of itself prove that the crew were guilty of unreasonable or unnecessary delay in completing their work and moving the train.

█ Evidence which is consistent with two conflicting hypotheses tends to support neither. Cupples Company Manufacturers v. National Labor Relations Board, 8 Cir., 106 F.2d 100, opinion filed August 1, 1939; Gunning v. Cooley, 281 U.S. 90, 94, 50 S. Ct. 231, 74 L.Ed. 720; Stevens v. The White City, 285 U.S. 195, 204, 52 S.Ct. 347, 76 L.Ed. 699; Ewing v. Goode, C.C., 78 F. 442, 444; Eggen v. United States, 8 Cir., 58 F.2d 616, 620.

█ The situation, therefore, with which we are confronted is, in substance, this: The train crew caused the train to obstruct the crossing in question on a night when snow was falling and there were occasional snow flurries which further reduced visibility, for the purpose of setting out a car destined to Dumont, without providing a signal man at the crossing to warn approaching travelers upon the highway; and while they were engaged in performing the duties which they had stopped at Dumont to perform, the automobile carrying Herbert Stevens was driven into the side of the standing train.

We are of the opinion that the Supreme Court of Iowa, in the case of Dolan v. Bremner, 220 Iowa 1143, 263 N.W. 798, has clearly ruled that under such circumstances there can be no recovery. In fact that case seems to be a stronger case for the plaintiff than this one. Jessie Dolan was injured while a guest in an automobile which collided, at a grade crossing, with a railroad refrigerator car which was obstructing the crossing. The accident happened after dark, when there was a mist or fog overhanging the low lands and low portions of the traveled highway upon which the automobile was approaching the railway. There was a slight dip in the highway just before the automobile reached the tracks. The automobile was being driven at a speed of 20 to 25 miles an hour. The headlights were on, and the driver testified that the rays from his headlights appeared to be lighting up the road ahead of him, but that as he proceeded up the slight incline toward the railroad tracks he suddenly realized that there was a fog hanging over the road at this point and that there was a railroad refrigerator car standing across the highway; that he applied his brakes and tried to turn his car to the right, but was unable to prevent it from colliding with the side of the freight car. The plaintiff in that case claimed that the defendant had failed to maintain at the crossing the proper statutory warning signals and that, in addition, it had failed to maintain a lookout or guard at the crossing to warn approaching vehicles of the obstruction of the highway by the train. The trial court had submitted the case to the jury and there had been a verdict for the plaintiff. Upon appeal, the Supreme Court of Iowa reversed. It held that there was no evidence of lack of statutory warnings, and then considered the question as to whether, because of the peculiar circumstances existing at the time and place where the accident occurred, there was any obligation on the part of the defendant to furnish any warning in addition to that giv-

en by the actual presence of the train upon the crossing. The Court said (220 Iowa at page 1148, 263 N.W. at page 800):

"Conceding that the appellee and the driver of the car in which she was riding may have been deceived by fog or mist overhanging the crossing, which because of the color of the railroad car made its presence on the crossing indiscernible in such fog or mist, we do not think there is anything in the evidence that would impose upon appellant the duty of anticipating that such a condition would exist, or that would impose upon appellant the duty of anticipating that appellee and the driver of the automobile in which she was riding would not, by the exercise of ordinary care, avoid the dangers incident to such a condition if it did exist. On the contrary, we think the railroad company would be justified in assuming that, if there was a mist or fog upon the highway, the driver of the car in which appellee was riding would reduce his speed, so that he would not travel into or through such mist or fog at any greater rate of speed than would enable him to stop within the distance in which he could see objects ahead of him.

"Even if it be conceded, however, that the evidence was such that it made a question for the jury as to the necessity of other and additional warning signs or signals, and, even if the appellant railroad company may have been negligent in that respect, we think the evidence insufficient to show that such negligence, if any, on the part of the railroad company was the proximate cause of the accident and injuries to the appellee. Railroad tracks necessarily cross public highways, and it is necessary that trains at times be stopped upon such public highway crossings. When this is done and the railroad company is making reasonable and legitimate use of such crossing, the presence of the train itself is sufficient warning to any one using the highway, and there is no duty upon the part of the railroad company to anticipate that one using the highway will not see such train and be apprised of its presence as fully as he would be if other signs or warnings were used."

In the course of its opinion, the Court quotes with approval from cases which hold that a train upon a crossing is in itself effective and adequate warning of its presence, and that, in the absence of stat-ute, no other warning is required. It quotes the following language from Crosby v. Great Northern Ry. Co., 187 Minn. 263, 267, 245 N.W. 31, 32: "Common experience is that the occupation of a highway crossing by a train is visible to travelers on the highway including automobile drivers whose cars are properly equipped with lights and who exercise ordinary care. It would seem that a train upon a crossing is itself effective and adequate warning. It has always been so considered. This is so whether the train is moving or standing. A railroad company is under no obligation to light an ordinary highway crossing at night so that its trains thereon may be seen by travelers." It also quotes the following from the syllabus in the case of Olson v. Chicago Great Western R. Co., 193 Minn. 533, 259 N.W. 70, 71: "Statutory signals for trains passing over highway crossings are exclusively for the benefit of travelers on the highway so as to warn them of approaching trains. Where a train is actually occupying such crossing when the driver upon the highway arrives, the train is itself an effective and adequate warning."

Finally, the Supreme Court of Iowa says (220 Iowa at page 1153, 263 N.W. at page 803): "The appellee has not cited and we have been unable to find any authority in which the absence of statutory or other warning signs or signals at a railroad crossing has been held to be negligence constituting the proximate cause of an accident, where an automobile upon a highway is driven into the side of a railroad car standing upon or moving across such highway. As further supporting appellant's contention that the purpose of warnings or signals at railway crossings is only to protect the public from approaching trains and not to warn of the presence of trains actually upon the crossing, and that, where an automobile is driven into the side of a railroad car occupying a highway crossing, the absence of warning, either statutory or otherwise, cannot be the proximate cause of the collision and damages resulting therefrom, see Gilman v. Central Vermont R. Co., 93 Vt. 340, 107 A. 122, 16 A.L.R. 1102; Nadasky v. Public Service R. Co., 97 N.J.L. 400, 117 A. 478; Jacobson v. New York, Susquehanna & Western R. Co., 87 N.J.L. 378, 94 A. 577; Brinson v. Davis, 32 Ga.App. 37, 122 S.E. 643; Scott v. Delaware, L. & W. R. Co., 222 App.Div. 409, 226 N.Y.S. 287;

Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750; St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110; Philadelphia & R. R. Co. v. Dillon, 1 W.W.Harr. [247] 31 Del. 247, 114 A. 62, 15 A.L.R. 894; Mc-Glauflin v. Boston & Maine R. R., 230 Mass. 431, 119 N.E. 955, L.R.A.1918E, 790; Brown v. Southern Ry. Co. [5 Cir.], 61 F.2d 399; Pennsylvania R. Co. v. Huss, 96 Ind.App. 71, 180 N.E. 919."

The defendant had the right to occupy this highway crossing at Dumont for legitimate business purposes. Butters 'v. Chicago, M. St. P. & P. R. Co., 214 Iowa 700, 707, 243 N.W. 597, 600. There is no evidence which would justify the conclusion that the train crew had caused the crossing to be unnecessarily obstructed. Assuming—without deciding—that the blocking of the crossing for an unreasonable length of time would have constituted actionable negligence which the jury might have found to be the proximate cause of the collision,[1] a finding that the train had so blocked the crossing would be based upon speculation and conjecture, since there was no evidence that the train crew had failed to use reasonable diligence in doing the necessary work incidental to the setting out of the coal car.

We are satisfied that, under the law of Iowa, as announced in the cases of Butters v. Chicago, M. St. P. & P. R. Co., 214 Iowa 700, 243 N.W. 597, and Dolan v. Bremner, 220 Iowa 1143, 263 N.W. 798, the court below should have directed a verdict for the defendant. While the Dolan case involved a lack of visibility due to mist, and this case involves a lack of visibility due to snow, we can see no substantial distinction in principle. If the train crew in the Dolan case were not required to anticipate that a driver's vision might be obscured by mist or fog, the defendant's train crew were not required to anticipate that the vision of a driver might be obscured by a sudden flurry of snow, or that he would be driving at a speed which would prevent him from stopping within the distance that a freight car would be visible.

In view of our conclusion, we think it is not necessary to consider any other questions.

The judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

---

[1] See in this connection: Orton v. Pennsylvania R. Co., 6 Cir., 7 F.2d 36, 37, 38; Webb v. Oregon, W. R. & Nav. Co., 195 Wash. 155, 80 P.2d 409, 411, and cases cited; Short v. Pennsylvania R. Co., 46 Ohio App. 77, 187 N.E. 737; Mann v. Central of Georgia R. Co., 43 Ga.App. 708, 160 S.E. 131; Hofstedt v. Southern Pac. Co., Cal.App., 1 P.2d 470; Dickey v. Atlantic Coast Line R. Co., 196 N.C. 726, 147 S.E. 15.