IRENE LINDQUIST, Appellant, v. DES MOINES UNION RAILWAY COMPANY, Appellee.

No. 47061.

(Reported in 30 N. W. 2d 120)

DECEMBER 16, 1947.

REHEARING DENIED MARCH 12, 1948.

John Paul Jones and William H. Fulton, both of Des Moines, for appellant.

Duncan, Hughes & Bierman, of Des Moines, for appellee.

HAYS, J.—Action for damages for injuries sustained when a car in which plaintiff was riding as a guest collided at night with a boxcar standing on defendant's tracks at a point where

the tracks cross Southeast Thirtieth Street (also Highway No. 60) in Des Moines, Iowa.

Plaintiff's petition alleges four grounds of negligence upon the part of defendant and its employees which are asserted to be the proximate cause of her injuries. They are so closely interwoven that they may be consolidated and stated as follows: That defendant, having knowingly created a hazardous condition by placing a boxcar upon said crossing, failed to exercise the ordinary care required under the circumstances for the protection of plaintiff and others using the highway. Defendant's answer amounts to a general denial. At the close of the plaintiff's case, upon defendant's motion, the trial court directed a verdict for defendant on the ground that no negligence was shown on the part of defendant, and if any negligence was shown, it was not the proximate cause of plaintiff's injuries. No question is involved of any statutory violation nor of plaintiff's contributory negligence. From a judgment thus entered plaintiff appeals.

Appellant asserts three alleged errors upon the part of the trial court as a basis for reversal. They are: (1) In excluding testimony of witnesses Roth and Morrow as to other accidents, near-accidents, and observations of said witnesses at the same point under the same or similar circumstances. (2) In rejecting a proffer of testimony by the witness Morrow. (3) In sustaining defendant's motion for a directed verdict.

Appellee supports the judgment with the contention that the presence of the train itself is sufficient warning to anyone using the highway and that no duty rests on it to anticipate injuries as in the instant case. Also that no unusual hazard existed.

Appellee urgently insists that the trial court, in finding as a matter of law that no unusual hazard existed, and if one did that the same was not the proximate cause of plaintiff's injuries, was correct and in accordance with the Iowa authorities; citing Dolan v. Bremner, 220 Iowa 1143, 263 N. W. 798, and Dilliner v. Joyce, 233 Iowa 279, 6 N. W. 2d 275. Appellant recognizes these two cases by stating:

"It is submitted that signals can be and frequently are a

requirement of the common-law duty of ordinary care, and that if and when such duty exists it is no less mandatory upon the defendant than if declared to exist by statute— *unless, of course, the rule in Dilliner v. Joyce and Dolan v. Bremner is to persist.*" (Italics added.)

She asks that this court examine and reappraise these two decisions.

Appellant assumes the burden of establishing two propositions, namely, negligence of the appellee, and that the negligence was the proximate cause of the injuries. We have always recognized the rule that negligence may be predicated upon a statute violation or upon the common-law rule of "ordinary care under the circumstances." It may be based upon acts of commission or of omission. Both are based upon the existence of a duty toward the complaining party, either as an individual or as a member of a group. If no duty exists there can be no negligence upon which proximate cause may be based and hence no recovery may be had. If the Iowa rule is, as claimed by appellee, that no duty rests upon the railway company where cars are standing upon the crossing of a highway to give warnings in excess of those required by statute or ordinance, it is merely using idle words to say that the statutory warnings are minimum standards, not maximum; yet such are our holdings. See Butters v. Chicago, M., St. P. & P. R. Co., 214 Iowa 700, 243 N. W. 597; Glanville v. Chicago, R. I. & P. Ry. Co., 190 Iowa 174, 180 N. W. 152; Kowalski v. Chicago G. W. Ry. Co., 8 Cir., Iowa, 84 F. 586; Coonley v. Lowden, 234 Iowa 731, 12 N. W. 2d 870; Hitchcock v. Iowa Southern Util. Co., 233 Iowa 301, 6 N. W. 2d 29; annotation 161 A. L. R. 111.

If such be the rule, and it is adhered to by us, then under no circumstances can the railroad company be liable, in the absence of statutory requirements, where in legal use of the crossing it allows a boxcar to stand thereon without lights or other warnings, irrespective of all the other surrounding circumstances. The rule of common-law negligence is abolished so far as this type of case is concerned.

Dolan v. Bremner, supra, 220 Iowa 1143, 1148, 263 N. W.

798, 800, is a case where the driver of a car collided with a train standing upon a grade crossing. As the car approached the crossing, which is on a slight upgrade, at a speed of twenty-five miles per hour, he realized a fog obscured the crossing and only then saw the train. There was a verdict for plaintiff, which on appeal was reversed upon the theory that there was no negligence that constituted the proximate cause of the injury and a verdict should have been directed for defendant. We there said:

"Even if it be *conceded*, however, that *the . evidence was such that it made a question for the jury* as to the necessity of other and additional warning signs or signals, *and*, even if *the appellant* railroad company may have been *negligent* in that respect, we think *the evidence insufficient to show* that such negligence, if any, on the part of the railroad company was the *proximate cause* * * *. Railroad tracks necessarily cross public highways, and it is necessary that trains at times be stopped upon such public highway crossings. When this is done and the railroad company is making reasonable and legitimate use of such crossing, the presence of the train itself is sufficient warning to anyone using the highway, and *there is no duty upon* the part of the railroad company *to anticipate that one* using the highway *will not see such train* and be apprised of its presence as fully as he would be if other signs or warnings were used." (Italics supplied.)

Dilliner v. Joyce, supra, 233 Iowa 279, 287, 6 N. W. 2d 275, 280, is another case where there was a verdict for plaintiff and reversal upon the same theory as in the Dolan case, although by a divided court. Speaking of the facts, the court said:

"It *is claimed by the appellee, and there is evidence to support it,* that the night was very dark, there were no stars or moon, it was very foggy and smoky. The gravel was a dirty, yellow-looking tan color. The* * * car that was blocking the crossing was a dirty, yellow refrigerator car, and its head trucks were south of the road and its back trucks were north of it and this allowed the light from an oncoming car to shine

under the refrigerator car. None of the railroad employees was present at the crossing to give any signals * * .*. The * * * employees were all well acquainted with the crossing." (Italics supplied.)

The Dolan case, supra, at page 1148 of 220 Iowa, page 800 of 263 N. W., is then quoted with approval.

In 161 A. L. R. 111, 139, in commenting on the Dolan and Dilliner cases (among others), appears the following:

"As a practical proposition in many cases noted in the footnote, the courts have exhibited such a tendency to ignore credible evidence for the plaintiff, or to hold that the circumstances do not impose any duty upon a railroad, that it seems that the question of negligence will be determined in every case as a matter of law and that the plaintiff cannot recover under any conceivable circumstances."

To say that even though sufficient facts exist on the question of negligence to go to the jury but that they are, as a matter of law, insufficient to show proximate cause is, as a general statement, contrary to our recognized rules on proximate cause. In the recent case of Lawson v. Fordyce, 234 Iowa 632, 641, 12 N. W. 2d 301, 306, we quote with approval from Fitter v. Iowa Tel. Co., 143 Iowa 689, 693, 121 N. W. 48, 50, as follows:

" 'Proximate cause * * * [is a question] for the jury, *save in very exceptional cases* where the facts are so clear and undisputed, and the relation of cause and effect so apparent to every candid mind, that but one conclusion may be fairly drawn therefrom.' " (Italics supplied.)

In Godbey v. Grinnell E. & H. Co., 190 Iowa 1068, 1074, 181 N. W. 498, 501, we quote with approval from Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256, 259, as follows:

" 'The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it.

\* \* \* It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that *it ought to have been foreseen in the light of the attending circumstances.'"* (Italics ours.)

This presupposes a duty. Again at page 1076 of 190 Iowa, page 502 of 181 N. W., we say:

" 'Where there is an intervening agency, it is generally held that the intervening act of an independent voluntary agent does not arrest causation nor relieve the person doing the first wrong from the consequences thereof, if such intervening act was one which *would ordinarily be expected* to flow from the act of the first wrongdoer.'" (Italics added.) Burk v. Creamery Pkg. Mfg. Co., 126 Iowa 730, 734, 102 N. W. 793, 794, 106 Am. St. Rep. 377..

So far as the Dolan and Dilliner cases are concerned, we are not interested in what the facts may have been on the question of negligence. However, those cases purport to state a rule of law in the particular type of case involved which would abrogate our rules of common-law negligence and make the liability of the railway company dependent solely upon the directives of the legislature as to signals, irrespective of existing circumstances. This rule is neither based upon reason nor sound judgment and should not be persisted in. We now overrule the decisions announced in the cases of Dolan v. Bremner and Dilliner v. Joyce, supra. We return to the common-law rule of negligence, with statutory requirements being merely a minimum standard.

Let us now examine the instant case in the light of the foregoing pronouncement and under the assigned errors.

As to the general surroundings at the place of the accident the record shows that Southeast Thirtieth Street runs north and south. This street (or Highway No. 60) approaches the city from the east, with the Des Moines sewage-disposal plant to the south, the Spencer elevator and soybean plant to the

north, and then turns north toward the state fairgrounds. About three city blocks distance to the north from this turn in the highway are three tracks of the appellee, Des Moines Union Railway Company. These tracks, being switching tracks leading to the Spencer plant to east of the highway, cross the street in a diagonal direction northwest to southeast. On the east side of the street, which is a 20-foot paved slab, and 50 feet 5 inches to the north of the center track, is a city street light, the light itself being 18 feet 6 inches above the pavement. South of the three tracks is a filling station, located about 60 feet west of the pavement. Between the station and the pavement are two spotlights, together with other lights which illuminate the station. South of the station and about 150 feet south of the tracks is a storage tank illuminated by a spotlight located on a pole some 15 feet to the north and east of the tank, which light is not visible to one approaching the tracks from the south until within 210 feet thereof. This light passes out of direct vision as one arrives within 190 feet of the tracks. The street light to the north and east of the tracks is visible to one approaching from the south to a point 130 feet south of the tracks, and then, if an ordinary boxcar is standing on the crossing, the light is hidden from view. The record further shows that on the night of November 28, 1945, appellant, riding as a guest in a car driven by Guy Wyant, crossed these tracks from the north and later in the evening, at about 11:30, approached them from the south, at which time the accident in question occurred.

Wyant, as a witness for appellant, testified in substance to the general surroundings as above set forth. He further testified: that the night was clear, the pavement dry, his car was equipped with good brakes, new tires, and headlights which revealed objects to a distance of 150 feet when on low beam, as they were on the night in question; that he was driving between forty to forty-five miles per hour in a forty-five-mile speed zone; that the lights from the filling station seemed to cast a shadow on the tracks; that he was watching the highway until the spotlight at the tank momentarily flashed in his eyes; that he, thinking it was a car approaching from the west, glanced to the west and then looked again to the north. At

this point appellant screamed and he applied his brakes but was unable to stop before hitting the boxcar. He did not see the boxcar until within about 75 feet of it. At forty-five miles per hour it required 82 feet 7 inches distance to stop the car.

Appellant as a witness testified as to the lights about the filling station; that she was looking ahead but saw no obstruction of the highway until the car loomed up in front and she screamed at the same instant that Wyant applied the brakes.

B. W. Vertz, a witness for appellant, stated that on the night in question he, in his car, followed the Wyant car by a distance of about three or four blocks at the time that it turned north at the disposal plant. After turning north he did not see the taillights on the Wyant car. He was driving about thirty-five miles per hour, his headlights were on low beam, which revealed objects about 75 feet ahead. He was about 50 feet from the Wyant car when his lights hit the back end of the Wyant car and he did not see the train until just before he stopped alongside the Wyant car and just south of the boxcar. The train was sitting in the shadow of the lights from the filling station.

Ruby Fritz, riding with Vertz, testified: that she lived near the crossing and was familiar with it; that she was looking and could not see objects ahead until the Vertz headlights shone on the taillights of the Wyant car, at which time she noticed that he applied his brakes, and then she saw the boxcar across the highway. The lights from the filling station do not shine out as far as the tracks.

George Roth, as appellant's witness, stated that he was on duty at the filling station on the night in question; that he had been thus employed for five years. The lighting at the station that night was the usual lighting.

We have set forth the record at considerable length as there was a directed verdict for defendant at the close of plaintiff's case. Under that situation we must, on this appeal, accept the record as a verity and examine it in the light most favorable to the appellant.

In addition to above record, appellant asked witness Roth if he knew of his own knowledge of other accidents which had

occurred at .that crossing, after night, and prior to the time in question, in which cars going north collided with the side of standing cars on the crossing. An objection as being irrelevant, injecting collateral issues, and no proper foundation was sustained. A proffer of testimony by this witness to the effect that two accidents within the last five years had occurred ·in which two persons had been killed; that in both instances, cars were being driven from the south into the side of an unlighted car, on clear nights, with unobstructed vision. This offer was made specifically as bearing upon the question of the existence of a hazard due to the obstruction of the crossing and as to knowledge of the hazard on the part of the appellee. A similar objection was sustained. In ruling thereon the trial court stated that it construed the decision of the supreme court handed down on the proposition (decision not identified) as contrary to appellant's contention and under that holding excluded the testimony and proffered testimony.

Witness Morrow, employed at the city disposal plant, testified that he was familiar with the crossing and its surroundings, having crossed it twice a day six days out of eight for six years, and had been at the crossing at all hours of the day and night. He was then asked if, on approaching the crossing from the south in an automobile on a dark night, with headlights burning brightly and in good condition, at an ordinary speed, looking straight ahead, it is difficult to see a freight car on that crossing until close to it. An objection as being opinion and conclusion, a collateral matter, and no foundation was sustained. He was also asked if he, in approaching the crossing from the south shortly prior to November 28, 1945, under good visibility, at an ordinary speed in an automobile, had any near-accidents himself. The same objection was sustained. He was then asked if, during a few months prior to the accident, he had seen a flagman with a lantern at that crossing when standing trains were there. Same objection sustained.

Appellant then offered to show by said Morrow that it was difficult to see cars on the crossing until within 50 to 75 feet thereof; that he personally had two very narrow escapes from colliding with cars standing on the crossing when ap-

proaching from the south on a dark, clear night with no impairment of visibility; that between August and November 1945 he had repeatedly seen trainmen station a flagman at night with a lighted lantern on or adjacent to the pavement and that the lantern was used to attract the attention of oncoming automobiles. This proffer was offered for the purpose of showing a hazardous condition and knowledge upon the part of appellee. This proffer was rejected on the same objection by appellee.

Now as to the assigned errors: Assignments Nos. 1 and 2, being of the same nature, will be considered together. Was it error to reject the testimony and proffer thereof of witnesses Roth and Morrow?

█ Appellant under the issues has the burden of establishing the existence of a hazardous situation created by appellee, due to the obstruction of the crossing. She also has the burden of establishing that appellee knew or should have known of the hazardous situation. In establishing these propositions, appellant is entitled to the benefit of any and all offered testimony which complies with recognized rules of evidence.

█ (a) Is the offered testimony of witness Roth as to other accidents admissible to show the dangerous character of the place? The authorities are divided. What appears to be the majority rule is stated in 128 A. L. R. 599:

"By the weight of authority, evidence of former accidents at a place, to show its dangerous character, is admissible, provided the relevancy of such evidence appears from the occurrence of the former accidents under substantially similar circumstances."

38 Am. Jur., Negligence, section 314, says:

"The general rule is that proof of some similar accidents or injuries at or near the same place * * * but under the same or substantially the same conditions and not too remote in point of time * * * [is] admissible upon the question of notice or knowledge of the dangerous condition, provided the former accidents testified to were not such that the defendant could not have known of them, and further that they were of a

nature which, if known, would have brought home to the defendant a warning of the defect in question."

See, also, 20 Am. Jur., Evidence, section 304; Wigmore's Code of Evidence, Second Ed., sections 442, 527; District of Columbia v. Armes, 107 U. S. 519, 2 S. Ct. 840, 27 L. Ed. 618; Chicago & N. W. Ry. Co. v. Netolicky, 8 Cir., Iowa, 67 F. 665.

Iowa has adopted the minority rule and holds such evidence to be inadmissible "both from principle and authority." Hudson v. C., & N. W. R. R. Co., 59 Iowa 581, 13 N. W. 735, 44 Am. Rep. 692; Mathews v. City of Cedar Rapids, 80 Iowa 459, 45 N. W. 894, 20 Am. St. Rep. 436; Potter v. Cave, 123 Iowa 98, 98 N. W. 569. One of the principal reasons for the rejection of such testimony is that it injects collateral issues into the case on trial. However, this evidence is not offered upon any theory of liability on the part of appellee. No dispute is made as to the accidents, no recovery asked on account thereof, no increase in damages sought. It is merely showing that an accident did happen at the same place under substantially similar circumstances. It is no more an injection of collateral issues in this type of case than in other types of negligence cases in which we have upheld the admissibility of such type of evidence. See Moore v. City of Burlington, 49 Iowa 136; Frohs v. City of Dubuque, 109 Iowa 219, 80 N. W. 341; Spurling v. Incorporated Town of Stratford, 195 Iowa 1002, 191 N. W. 724 (defective sidewalk cases); Larson v. Stanton State Bank, 202 Iowa 333, 208 N. W. 726 (other fraudulent representations to show fraud in instant case); Crouch v. National Livestock Remedy Co., 205 Iowa 51, 217 N. W. 557 (ill effect of defective hog remedies upon other hogs); Graeser v. Jones, 217 Iowa 499, 251 N. W. 162 (evidence of a conversation, otherwise hearsay, to show the conversation was actually had).

While the weight and credibility of such evidence is for the trier of fact, it would appear that it is relevant to the issue involved (the existence of a hazardous condition and notice thereof to the defendant); that by the great weight of authority, and based upon sound principle, such evidence is admissible as an abstract proposition. In so far as our former decisions

have adopted the converse rule, they are overruled and we now adopt the majority rule and hold same to be admissible.

■ (b) Examining the testimony, and proffer thereof, of witness Roth as to prior accidents in the light most favorable to appellant and in the light of the above pronouncement, we find there is such a substantial similarity as to bring it within the rule and that its rejection by the trial court constitutes error. Under the same line of reasoning and upon the same theory, we likewise hold that witness Morrow's testimony, and proffer thereof, as to narrow escapes should have been admitted. See Chicago & N. W. Ry. Co. v. Netolicky, supra. Appellee would distinguish this case on the fact that it involves a moving train; while the case at bar is one standing on the crossing. There is a difference in the situations but there is more logic and reason for its admission in the "standing car" case than in the "moving train." The latter presumably is accompanied not only with a moving object, as compared with a stationary one, but also with the usual noises incidental to the operation of the train. None of these existed in the case at bar. On this question, see Hendrickson v. Union Pacific R. Co., 17 Wash. 2d 548, 136 P. 2d 438, 161 A. L. R. 96, 101, 102; Moore v. Chicago, B. & Q. R. Co., 28 F. Supp. 804.

■ (c) Further exception is taken to the rejection of the offered testimony of witness Morrow to the effect that between August and November 28, 1945, he had repeatedly seen the trainmen station a flagman with lighted lantern at said crossing to warn oncoming automobiles. Appellee in argument urges that there is not sufficient showing of a custom to establish same, and hence the testimony is not competent or relevant. However, this testimony is not offered to show a custom, nor does appellant claim reliance upon the presence of an anticipated flagman as a basis for recovery. Appellant offers this testimony upon the sole proposition that it tends to show recognition by the appellee of a dangerous condition due to the obstruction of the crossing. Upon this theory such testimony is clearly relevant and should have been admitted.

■ (d) Proffer was also made of testimony by Morrow to the effect that under substantially similar conditions he had found it extremely difficult to observe a boxcar standing on

this crossing until within close proximity thereto. It was rejected by the trial court. While it is, in a sense, an opinion, it is of such a nature as is covered by the rule announced in Shaw v. Duro, 234 Iowa 778, 14 N. W. 2d 241; and Hansen v. Waugh, 237 Iowa 304, 21 N. W. 2d 762, where it is held that a conclusion may be admissible when the matter to which the testimony relates cannot be reproduced or described to the jury as it appeared to witness. Surely, under the issues of this case, whether or not the obstruction was or was not readily discernible to one approaching from the south is relevant, and yet; by no other manner than a flat statement by the witness that it was or was not could the same be shown. This testimony should have been received upon the issue of a hazardous condition.

Appellant's final assignment of error goes to the question of the directed verdict. This involves a twofold proposition: (1) Under the record, viewed most favorable to appellant, Did such a hazard exist as to require acts of the appellee in excess of the statutory requirements? Was the appellee negligent? and (2) if so, Was such negligence a proximate cause of the injury?

■ (1) Could a reasonable-minded person find negligence from this record? As before stated, the weight of authority is that the statutory requirements merely constitute a minimum standard, and if a hazardous condition is created, then under the rules of common-law negligence an additional duty to warn of the condition exists. (The Dolan and Dilliner cases were contra.) This record shows a main highway, tracks crossing same in close proximity to a brilliantly lighted filling station, the lights of which, instead of lighting the tracks, cast a shadow thereon; that when a boxcar is standing on the crossing it is difficult to see until close to it. Several accidents have happened under substantially the same conditions, and the appellee had, for a few months prior to the accident, repeatedly guarded the crossing by a flagman with a lantern. Whether this record discloses, facts which would justify a finding of an unusually dangerous condition, and whether reasonable care under these circumstances would require additional safeguards, cannot be

disposed of by the court as a matter of law. They are fact questions to be determined by the jury. Bradley v. Interurban Ry. Co., 191 Iowa 1351, 183 N. W. 493; Glanville v. Chicago, R. I. & P. Ry. Co., 190 Iowa 174, 180 N. W. 152; St. Louis-S. F. Ry. Co. v. Prince, 145 Okla. 194, 291 P. 973, 71 A. L. R. 357; Butters v. Chicago, M., St. P. & P. R. Co., 214 Iowa 700, 243 N. W. 597; Wiese v. Chicago G. W. R. Co., 182 Iowa 508, 166 N. W. 66; Anderson v. United States R. Admn., 203 Iowa 715, 211 N. W. 872; Williams v. Mason City & Ft. Dodge Ry. Co., 205 Iowa 446, 214 N. W. 692.

(2) The trial court further held that, even if negligence existed, it was not the proximate cause of the injury. The established rule in this state has been that whether negligence is a proximate cause of an injury is always a question for the jury when different minds might reasonably reach different conclusions. Bell v. Brown, 214 Iowa 370, 239 N. W. 785. See, also, Fitter v. Iowa Tel. Co., 143 Iowa 689, 121 N. W. 48; Lawson v. Fordyce, 234 Iowa 632, 12 N. W. 2d 301, and cases cited supra.

 While it is true that the act of Wyant in driving his car into the standing car was an intervening cause, yet this does not as a matter of law make it the sole proximate cause such as to relieve appellee. If negligence existed, it was a continuing negligence so long as the crossing was blocked without adequate signals. Assuming Wyant to have been negligent, still, but for the continuing negligence of appellee presumably no accident would have occurred. A subsequent and independent intervening cause will not absolve a defendant of negligence if it might reasonably have been foreseen. Webber v. Larimer Hardware Co., 234 Iowa 1381, 15 N. W. 2d 286; Restatement of the Law, Torts, section 441; Wright v. Chicago, R. I. & P. R. Co., 222 Iowa 583, 268 N. W. 915; Blessing v. Welding, 226 Iowa 1178, 286 N. W. 436. If the original wrong concurs with the intervening cause and both act proximately in producing the injury, both, as a rule, are proximate causes. Judd v. Rudolph, 207 Iowa 113, 222 N. W. 416, 62 A. L. R. 1174.

We hold that the assigned errors have been substantiated, as above outlined; that the case should have been submitted to

372

a jury; that the judgment of the trial court should be and is reversed.—Reversed and remanded.

OLIVER, C. J., and BLISS, GARFIELD, and MULRONEY, JJ., concur.

HALE, MANTZ, and SMITH, JJ., dissent.